IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CRIMINAL NO. 06-249 (PLF) |
| | : | |
| v. | : | |
| | : | |
| MICHAEL JOHN O'KEEFE, Sr. and | : | |
| SUNIL AGRAWAL, | : | |
| | : | |
| Defendants. | : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT AGRAWAL'S
MOTION TO COMPEL DISCOVERY UNDER RULE 16(a)(1)(E)**

The United States of America, by and through the United States Attorney for the District of Columbia, respectfully opposes Defendant Sunil Agrawal's motion to compel discovery of items that he contends are material to his case. The items Defendant Agrawal seeks either are already provided, unavailable or do not exist, and/or immaterial or irrelevant. The defendant's motion is therefore without merit and should be denied. In support of this opposition, the government states as follows:

### I.  BACKGROUND

#### A.  Factual Background

Defendant Agrawal is the chief executive officer ("CEO") of STS Jewels, Inc., which specializes in designing, manufacturing, and distributing gems and jewelry. Defendant Agrawal has been the CEO of STS Jewels since 1996. The company has worldwide operations and employs a large number of foreign nationals.

Defendant Michael John O'Keefe, Sr., has been employed by the U.S. Department of State since 1983. He worked as a consular officer at the U.S. Consulate in Toronto, Canada from July, 2003, up to the time of his arrest in August, 2006. In approximately May, 2004, Defendant

O'Keefe was given the title of Deputy Non-Immigrant Visa ("NIV") Chief by the Chief of the NIV section, Michael Schimmel. As a consular officer, Defendant O'Keefe's duties included reviewing visa applications, conducting in-person interviews of visa applicants, and making visa issuance determinations.

A United States visa is a travel document placed in a passport by a consular officer working for the Department of State. It allows the bearer to come to the United States and apply for admission into the country. In order to obtain a visa to the United States, a visa applicant must fill out an application form, present a photograph and a passport, be interviewed by a consular official, have a fingerprint scan conducted, pay appropriate fees, and present evidence of qualification for the visa.[1] The final decision as to whether a visa is issued or denied is up to the interviewing consular officer, who makes the determination based on experience, information set forth in the application, and the applicant interview.

There are 217 consulates or embassies worldwide that process United States visa applications. Approximately 24.7 million visa applications were processed from January, 2004, to present by these posts. During this same time period, the Toronto, Canada consulate processed approximately 199,000 visa applications. Overall policy guidance regarding the visa application and issuance process is set forth in the Foreign Affairs Manual ("FAM") and disseminated through a series of Department of State cables, but operational policies and procedures are generally dictated by the management of each respective consular office.

---

[1] There are two types of visas – immigrant and non-immigrant. Moreover, there are several categories of visas, for example, H-1B for specialty workers, L-1 for intracompany transfers, and B1/B2 for temporary visitors for business or pleasure. Each category has particular requirements which an applicant must meet in order to obtain the visa.

During all times relevant to the Indictment – February 1, 2004, through August 1, 2006 – the Toronto consulate had a published policy, which was available on its public website, that it would only accept applications for non-immigrant visas from persons with scheduled appointments. Applicants were further advised that having a visa appointment did not guarantee the actual issuance of a visa. In addition, applicants were also provided with information about the procedures for obtaining an appointment and the approximate waiting time between making the request for an appointment and having such an appointment scheduled.

In Toronto, an individual applying for a visa could either contact the visa appointment reservation system via the internet or call a dedicated telephone line to schedule an appointment. The waiting period after making such a request varied; however, the consulate would periodically update an estimated number of days on its website. For instance, on April 19, 2006, the posted wait time was seventy-one days. In order to obtain an earlier appointment, for example, for a legitimate business reason or family emergency, a visa applicant could request expedited treatment. In the Toronto consulate (at least from approximately May, 2004 to August, 2006), a person seeking an expedited visa interview appointment was directed to fax such a request to the Consular Officer in Charge, and the request was routed to the chief of the NIV section. However, the Toronto consulate would also grant requests made in the form of a telephone call or in-person entreaty. Whatever the manner in which the request for an expedited appointment was transmitted, the NIV chief, or his designee in his absence, would make the determination of whether to grant or deny the request.

The Toronto consulate did not, and does not, keep any statistics or databases on how many expedited requests it received, approved, or processed. Nor does the State Department keep any

3

statistics or databases on how many expedited requests a given post received, approved, or processed. Moreover, depending on whether the request for expedited treatment was documented in some way (e.g., fax, letter, note, etc.) and/or that documentation was placed in the physical file of the applicant, there may not be any record of whether the application was handled on an expedited basis or not.

From February 1, 2004, through the time of Defendant O'Keefe's arrest in August, 2006, twenty-two visa applications were submitted to the Toronto consulate on behalf of STS Jewels-affiliated persons.[2] In many, if not all of these cases, Defendant Agrawal sent facsimiles specifically addressed to Defendant O'Keefe asking for expedited treatment for these STS Jewels-sponsored persons. When Defendant Agrawal made such a request for expedited treatment, Defendant O'Keefe routinely granted them and scheduled expedited appointments. Moreover, Defendant O'Keefe personally handled these STS Jewels applicants and issued twenty-one of

---

[2] Although Defendant Agrawal asserts that the United States Bureau of Citizenship and Immigration Services ("CIS") (formerly the Immigration and Naturalization Service) had already "legally authorized and approved each of the visa applicants to work for Mr. Agrawal's company in the United States (Defendant's Memorandum at 2)," the CIS only makes a determination as to whether a petitioner is eligible to apply for a certain category of visa. But CIS approval only constitutes *prima facie* evidence of eligibility, not approvability. Interviewing consular officers like Defendant O'Keefe are charged with the responsibility of granting or denying an application for a visa for all applicants – including CIS-approved persons – based upon the totality of information they gather, which includes verifying the identity of the applicant, and the veracity of information provided on the application and by the applicant during an interview. Thus, a consular officer can deny a CIS-approved applicant, and a visa application interview is not merely a rubber stamp of approval.

STS Jewels employees were not exempt from the visa interview process as CIS-approved individuals, rather they had to apply and have an interview just like every other visa applicant. A retrospective conclusion that none of these employees "raised any type of security or admissibility concern (Defendant's Memorandum at 3)" does not negate the requirement that all of the employees, at the time of their application, had to follow the complete visa application process, including participating in an interview with a consular officer.

these twenty-two visas.[3]

## B. Procedural Background

On September 27, 2006, Defendant Agrawal was arraigned on an Indictment charging him with on one count of conspiracy, in violation of 18 U.S.C. §371, and two counts of bribery, in violation of 18 U.S.C. § 201(b)(1) and (2). As set forth in the Indictment, the objects of the conspiracy were:

> A. for the defendant [O'Keefe] to receive travel, gifts, and other personal benefits in exchange for issuing visas to benefit defendant [Agrawal] and his business, STS Jewels.
>
> B. for defendant [Agrawal] to avoid established procedures for scheduling visa interview appointments and obtain expedited visa interview appointments and expedited issuance of visas, thereby saving him, his business and his employees time and money.

Indictment, Count One, at ¶ 9(A) & (B). The Indictment goes on to set forth how Defendants Agrawal and O'Keefe would frequently communicate with one another regarding the scheduling of expedited appointments and the issuance of visas for STS Jewels persons, as well as the provision of trips and jewelry paid for by Defendant Agrawal and bestowed upon Defendant

---

[3] Defendant Agrawal, but not STS Jewels, served as a contact for the visa application in the Toronto consulate of an individual who was not then an employee of STS Jewels in January, 2005. Because STS Jewels was not listed as the petitioner or employer of this individual, this individual's application is not included in the overall number of twenty-two STS Jewels-sponsored applications discussed above. Information regarding this individual has already been disclosed to the defense. With regard to this individual, Defendant Agrawal notified Defendant O'Keefe that the applicant's appointment had been "set by normal channels" and stated that Defendant O'Keefe had asked Defendant Agrawal to remind him about the appointment for this applicant a few days in advance. See Indictment at ¶ 11(15). Moreover, after this particular applicant was seen by a consular officer other than Defendant O'Keefe, Defendant O'Keefe immediately notified Defendant Agrawal that this individual's visa had been granted but that the individual had failed to request Defendant O'Keefe by name when he came in the consulate.

O'Keefe.

The bribery counts revolve around Defendant Agrawal provision of things of value to Defendant O'Keefe with an intent to influence Defendant O'Keefe in his official duties regarding the scheduling of expedited visa appointments and the granting of visas to STS Jewels applicants.

Defendant Agrawal has been provided with lengthy discovery on this case.[4] On December 22, 2006, and January 5, 2007, Defendant Agrawal made numerous written requests, many of which are the subject of the instant motion. On January 23, 2007, the government provided answers and information to the defense in response to Defendant Agrawal's letters. On February 7, 2007, the government further supplemented its response to Defendant Agrawal's Request 1(a) in his December 22, 2006, correspondence.

## II. DEFENDANT AGRAWAL'S DISCOVERY REQUESTS

Defendant Agrawal's December 22, 2006, and January 5, 2007, letters set forth approximately sixteen requests for information and dictated a "relevant time frame" for responsive material as January 1, 2004, through the present. The government responded to these discovery requests in a detailed January 23, 2007, correspondence, which is set forth in Exhibit 1 to Defendant's Memorandum of Law in Support of Mr. Agrawal's Motion to Compel Discovery Under Rule 16(a)(1)(E) (hereinafter referred to as "Defendant's Memorandum"), as well as the

---

[4] The government first provided Defendant Agrawal with discovery on October 2, 2006. Included within this discovery package were consular records for visas issued by Defendant O'Keefe to STS Jewels applicants; applications for visas from those individuals; electronic communications between Defendant O'Keefe and Defendant Agrawal, and others; the published policy of the visa waiting time and application procedure in the Toronto consulate; and copies of photographs, hotel records, credit card receipts, and other items. On October 12, 2006; November 6, 2006; December 7, 2006; and February 7, 2007, the government provided further discovery to Defendant Agrawal.

February 7, 2007, letter referenced above.

Nonetheless, Defendant Agrawal contends that the government has refused to provide what he characterizes as: "(1) information regarding the expediting of consular appointments; (2) information regarding STS Jewels employees' consular appointments; and (3) information regarding the government's investigation of the defendants and the tanzanite industry."[5] Defendant's Memorandum at 8.

As set forth in his proposed order, Defendant Agrawal seeks the following items for a time period of January 1, 2004, through the present:[6] (1) material from electronic searches of all servers

---

[5] Although these materials were not specified in Defendant Agrawal's proposed order accompanying his motion, in his January 5, 2007, letter, he asked for "[a]ll Items related to the Department of State's investigation into allegations regarding the tanzanite industry which were raised by the Wall Street Journal article, *Bought, Sold by Militants Near Mine, Tanzanite Ends Up at Mideast Souks (November 16, 2001)*." Request for this information, should it even exist, must be denied. This 2001 article detailed how the United States had "reports" that al Qaeda uses the gem tanzanite as a way to move funds around the world. Notably, nowhere in Defendant's Memorandum is there any justification for the materiality or relevance of this information.

[6] For the most part, artificially designating the "relevant time period" as extending beyond Defendant O'Keefe's arrest in August, 2006, to the present, raises questions of materiality and relevance.

Nonetheless, contrary to Defendant Agrawal's contention otherwise, the government has not limited its responses to his discovery requests to a period from January 1, 2004, up to August, 2006 (as opposed to up to present time). In support of his allegation, Defendant cites to pages 3 and 5 of the government's January 23, 2007, letter. At page 3, the government responded to Defendant Agrawal's request asking for items related to internal policies and procedures governing "any functions formerly performed by defendant Michael O'Keefe." The first paragraph of the government's response contained the following line: "In the relevant time period (up to his arrest in August, 2006), Defendant O'Keefe was a foreign service officer . . . ." This sentence is merely a statement of fact that does not impact the responsive answers provided by the government to that request or any others. Similarly, at page 5, in response to another request, the government stated that it had already provided to the defendant "all items related to [STS] employees who applied for visas from the Toronto Consulate from January 1, 2004, to approximately August, 2006." This is also merely a factual statement recounting the current

7

or hard drives for e-mail communications from all past and present NIV chiefs and deputy chiefs from fourteen North American consulate posts, including Toronto, as well as of fifteen NIV post website addresses using search terms ostensibly geared at obtaining information on expedited visa interview appointments; (2) information from a physical search of visa application or related files at the Toronto consulate; (3) all documents related to the applications and adjudications of all STS Jewels applicants at various worldwide locations; (4) a "full[]" response to his request for databases or data compilations concerning requests for expedited visa appointments;[7] (5) a "full[]" response to his request for items obtained by the government as a result of "surveilling" Defendant Agrawal, Defendant O'Keefe, any STS Jewels employee, or "exotic dancers" during the relevant time frame;[8] (6) all items, including autographs and photographs, given to or received by an employee of the Toronto consulate by any individual who requested any visa or requested an expedited visa interview appointment; and (7) "specific information regarding the government's efforts to respond to his discovery requests, including, but not limited to, the names and dates of all persons contacted, detailed descriptions of the information provided to and from those persons, and copies of documents or other items provided to the government during the

---

status of the government's disclosures.

[7] The government has already addressed this issue in part I.A. of this pleading and in its January 23, 2007, letter. In summary, the Department of State does not keep statistics on requests for expedited visa interview appointments. Therefore, no databases or data compilations are available for the government to provide to Defendant Agrawal.

[8] The government has addressed this issue in its January 23, 2007, correspondence. Defendant Agrawal has been provided with all of the photographs and video footage from law enforcement surveillance of Defendant Agrawal, Defendant O'Keefe, STS employees, and "exotic dancers," all of which took place from June 3, 2006, through June 6, 2006. These items reflect the totality of what the government has obtained from surveillance of these individuals during the course of this entire investigation.

government's efforts to locate discovery."[9]  Defendant Agrawal's Proposed Order (hereinafter "Proposed Order") attached to Defendant's Memorandum.

### III.  ARGUMENT

The government has provided a great deal of the material requested by Defendant Agrawal and has attempted to be responsive to his requests.  However, as an initial matter, all of the information sought as the subject of the instant motion is not material and relevant to this case or otherwise necessary in light of disclosures and information already provided to the defense.  The vast scope and breadth of the requests suggest that Defendant Agrawal is attempting to engage in a large scale fishing expedition.  Notwithstanding this fact, many of the items requested by Defendant Agrawal and characterized by him as material are simply not available or would not lead to reliable or meaningful information.  Thus, the government should not be compelled to turn over the items sought in Defendant Agrawal's Proposed Order.  If the Court finds otherwise, some of the requested items implicate a variety of confidentiality and security issues that the Court would need to resolve prior to disclosure.[10]

---

[9]     As set forth in the government's January 23, 2007, correspondence, the government has coordinated, and continues to coordinate, all requests for responsive information with the Legal Adviser's Office at the Department of State.  The government is aware of its obligations in terms of providing Rule 16 discovery and has made every effort to explore Defendant Agrawal's requests with the appropriate parties and to gather responsive information .  However, the government is not obligated, and objects to, having to provide the name of every individual that has been involved in these efforts, as well as every communication and scrap of information generated during the government's endeavor to address the issues set forth in Defendant Agrawal's many discovery requests.

[10]    For example, Section 222(f) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 202(f), specifically mandates against the disclosure of information regarding the issuance or denial of visas.  Thus, on its face, Defendant Agrawal's request for the adjudication determination of all STS Jewels applicants worldwide would be in direct contravention to this statute.

Defendant Agrawal argues generally that the government has failed "to provide documents and information that are critical to Mr. Agrawal's defense under Rule 16(a)(1)(E)." Defendant's Memorandum at 8. In support of this argument, Defendant Agrawal maintains that all of his discovery requests set forth in his motion satisfy the materiality element of the rule. This argument has no merit. Defendant Agrawal has failed to show that "there is a strong indication that [the evidence] will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal." United States v. Marshall, 132 F.3d 63, 68 (D.C. Cir. 1998) (citations omitted).

### A. Defendant Agrawal's Asserted Claims of Materiality

As a preliminary matter, Defendant Agrawal provides three reasons why the items he requests are material to his defense. These justifications do not demonstrate that the information sought by Defendant Agrawal would assist him in his defense, as set forth in Marshall above. The government will first generally discuss these materiality arguments and then analyze them as they specifically apply to each of Defendant Agrawal's discovery requests in the section below.

Defendant Agrawal first argues that "the information is material to the factual determination of whether Mr. O'Keefe violated 'established procedures' and therefore violated a 'lawful duty' – an element of bribery,"[11] as well as whether Defendant Agrawal allegedly gained

---

[11] The relevant bribery statute, 18 U.S.C. § 201(b), reads as follows:

> Whoever –
>     (1) directly or indirectly, corruptly gives, offers or promises anything of value to any public official . . . or offers or promises any public official . . . to give anything of value to any other person or entity, with intent –
>         (A) to influence any official act; **or**
>         (B) to influence such public official . . . to commit . . . or

10

special treatment through improper means. Defendant's Memorandum at 14-15. Thus, Defendant Agrawal indicates that his discovery requests will allow him to explore the existence of such a "lawful duty" on Defendant O'Keefe's part, as well as the existence of the granting of any improper favors by Defendant O'Keefe to Defendant Agrawal.

Next, Defendant Agrawal contends that the information is necessary to determine whether Defendant O'Keefe "was in fact performing an 'official act' – a key element of bribery – in granting expedited appointments" to STS Jewels applicants. Defendant's Memorandum at 15. According to 18 U.S.C. § 201(a)(3), the term "official act" means any decision or action on any question, matter, cause, suit, proceeding or controversy, which may at any time be pending, or which may by law be brought before any public official, in such official's official capacity, or in such official's place of trust or profit."

Lastly, Defendant Agrawal suggests that the information is material to the impeachment and cross-examination of the government's witnesses. Defendant's Memorandum at 15. Defendant Agrawal contends that the items in his discovery requests will allow him to cross-examine the government's "fact witness at the trial who will testify about the visa processes" and the government's expert witness who will testify about such things as the visa application process.

### B. Defendant Agrawal's Requests for Discovery Should Be Denied.

With these materiality arguments in mind, it is puzzling how Defendant Agrawal's requests for discovery will provide him with the information he purports to seek. For clarification

---

        allow . . . any fraud . . . on the United States; **or**
           (C) to induce such public official . . . to do or omit to do
        any act in violation of the lawful duty of such official . . . .

(emphasis added).

purposes, the following items set forth in Defendant Agrawal's Proposed Order encompass the sum of his outstanding discovery requests: (1) material from electronic searches of all servers or hard drives for e-mail communications from U.S. posts in "Montreal, Canada; Ottawa, Canada; Quebec City, Canada; Toronto, Canada; Vancouver, Canada; Mexico City, Mexico; Ciudad Juarez, Mexico; Guadalajara, Mexico; Hermosillo, Mexico; Matamoros, Mexico; Monterrey, Mexico; Nogales, Mexico; Nuevo Laredo, Mexico; and Tijuana, Mexico" from "all current and former non-immigrant visa chiefs and deputy chiefs," as well as 15 NIV post website addresses, using designated search terms; (2) information from a physical search of visa application or related files at the Toronto consulate, to include faxed or hard copy requests for expedited visa interview appointments and related documents; (3) all documents related to "the 82 STS Jewels employees' visa applications" at various worldwide locations, including the dates of the applications and reasons for refusals, if any; and (4) all "autographs, photographs, electronic images, media files, memorabilia of any kind or thing of value" given or received by an employee of the Toronto consulate by any individual who "requested any visa or submitted a request for an expedited visa interview appointment." Proposed Order at ¶¶ 2-4, 7.

### 1. Electronic Searches of Materials from North American Posts

Defendant Agrawal asks that the government undertake a mammoth electronic search of fourteen consulate posts located in Mexico and Canada. In conducting searches of all NIV chief and deputy chief's e-mails from those fourteen posts, as well as electronic communications captured through fifteen NIV websites, Defendant Agrawal's Proposed Order mandates that the following specified keyword search terms be run: "expedit*; accelerate; urgent; rush; emergency; exigent; accommodate w/10 appointment; accommodate w/10 interview; waive* w/5

appointment; waive* w/5 interview; Trister; Dingle; Green; and Spiegel." Proposed Order at ¶ 2. While some of these terms are self-evident, others are not. For instance, without any type of substantive proffer, Defendant Agrawal would have the Court order information on what seems are the last names of four individuals – Trister, Dingle, Green, and Spiegel.[12]

Yet, even putting aside these four names, the question of what type of information such keyword searches are calculated to obtain must be asked. Defendant Agrawal's request represents nothing more than a discovery fishing expedition. Even assuming arguendo that such a keyword search was possible and would correctly elicit information on expedited interview requests, it is unclear how an isolated reference mentioning the issue of an expedited request in Nogales, Mexico, would be material to this case. And to the extent one of these e-mails referred to an applicant's request for an expedited visa appointment at a given post, any meaning and significance of this information would seem to suffer in light of the isolated nature and lack of completeness of the information.

Defendant Agrawal's asserted materiality arguments that these items would assist in the determination of whether such elements of bribery as "lawful duty" and "official act" existed in the case and whether he improperly received any special favors from Defendant O'Keefe, as well as assisting him in cross-examining government witnesses, do not support his enunciated request for this information. As a threshold matter, therefore, Defendant Agrawal has failed to show how information from this request would be material to his defense, and he should be denied access to

---

[12] The "Trister" term ostensibly refers to Benjamin Trister, who is mentioned in Exhibit 3 of Defendant's Memorandum as an immigration lawyer who assists celebrities in obtaining visas. "Dingle" most likely refers to Brian Dingle, another immigration lawyer. The government has no knowledge as to the identities of "Green" and "Spiegel."

these requested items.

Moreover, having to undertake such a search would be extremely time consuming, labor intensive, and prohibitively expensive. The Department of State does not have a centralized archive or system for storage of e-mails.[13] Therefore, each post would have to separately attempt to find responsive electronic material for each requested user. Generally, e-mail data is only stored for a period of approximately six months to one year. Much of this information must also be accomplished by a rebuild of back-up tapes.[14] Furthermore, the fourteen posts do not have the capability to run searches using the search tools of "*" and "w/ [within]." All relevant server information would need to be copied and sent to the Department of State forensics unit in Virginia, which itself does not have the capability to conduct searches based upon one term's proximity to another. Additionally, the expansive nature of the terms would necessarily result in a data dump of documents which may not even involve the topic of expedited visa interviews, which is the stated purpose behind Defendant Agrawal's request. For instance, the words "urgent" and "rush" could easily bring up information totally unrelated to the topic of expedited visas. Consequently, each document containing one of the non-unique terms set forth in Defendant Agrawal's Proposed Order would have to be reviewed for content and responsiveness to the request. This would involve yet another level of review.

---

[13] The Department of State maintains a number of different databases and systems. Consequently, the fact that the government is able to provide certain data on the dates, locations, and identities of visa applicants, or Department of State cables, does not mean that there is a single, overarching and comprehensive database from which master searches can be conducted.

[14] This process was followed when obtaining Defendant O'Keefe's e-mails from his Department of State computer in Toronto. The retrieval and formatting of these e-mails involved a lengthy and complicated process, as outlined in the government's January 23 and 25, 2007, correspondences.

## 2. Physical Search of Toronto Consulate Visa Files

As stated above, the Toronto consulate has processed approximately 199,000 visa applications since January 1, 2004.  Due to the lack of any record keeping or statistics, electronic or otherwise, for information on requests for expedited appointments, the only possible recourse would be to physically search the actual files of each applicant in order to ascertain whether some documentation of whether expedited treatment had been requested or granted – for instance, a fax sheet or note – was in the file.  Defendant Agrawal has made just that request for a physical search of all visa applicant files for this type of documentation.

More fundamentally than the logistics of undertaking such an endeavor, Defendant Agrawal has not shown how this information would be material or relevant.  Once again, Defendant Agrawal's asserted materiality arguments that these items would assist in the determination of whether such elements of bribery as "lawful duty" and "official act" existed in the case and whether he improperly received any special favors from Defendant O'Keefe, as well as assisting him in cross-examining government witnesses, do not support his enunciated request for information on Toronto visa applicants other than those sponsored by STS Jewels.

The government has provided Defendant Agrawal with the manner in which the Toronto consulate, in specific, and the Department of State, in general, processed expedited visa appointment requests and the visas themselves during the relevant time period set forth in the Indictment.  The government has never denied that expedited interview appointments "were routinely granted in Toronto and elsewhere."  See Defendant's Memorandum at 4.  Information already provided to the defendants demonstrates this proposition.  To the extent that Defendant Agrawal seeks to obtain information on the number of expedited visa interviews requested in

Toronto to show that expedited visa requests were routinely granted, he does not need this information to make that point. Moreover, given the disclosed uncertainty about whether documentation regarding expedited visas even exists, any figure generated from such a search would most likely not be accurate.

Thus, culling through hundreds of thousands of files of visa applications, many of which are located off-site in storage, for evidence of expedited interview requests would be time consuming and yield questionable results. Nor would any findings support a contention by Defendant Agrawal that he did not have to resort to bribery because visa appointments were routinely expedited in Toronto. Putting it another way, even if either the granting of expedited visa appointments and the processing of visa applications were perfunctory functions in Toronto (which they were not), the fact that Defendant Agrawal mistakenly believed that he needed the assistance of Defendant O'Keefe for the convenience of having his employees receive quick turnaround service would not change the fact that he intended to influence Defendant O'Keefe in the performance of his duties in order to obtain a benefit.

### 3. Worldwide STS Jewels Employees' Visa Applications

The government has provided all known materials relating to STS Jewels-related individuals who applied for visas from the Toronto consulate from January 1, 2004, to approximately August, 2006.[15] This information is intrinsically linked to the charged offenses. In contrast, information regarding other STS Jewels-sponsored individuals who applied for visas worldwide from January 1, 2004, to the present, is not material or relevant to this case.

---

[15] The government is unaware of any STS Jewels-affiliated person applying for a visa from the Toronto consulate from August, 2006, to the present time.

Nonetheless, in an attempt to be responsive, the government relayed in its January 23, 2007, correspondence that approximately eighty-two applicants affiliated with STS Jewels applied for visas during this time period.[16] This number included the twenty-two applications involving STS Jewels-affiliated persons that were processed at the Toronto consulate from 2004 through 2006, and which are the subject of this bribery and conspiracy case.

Defendant Agrawal requests that all documentation, including the dispositions of the applications of all STS Jewels-affiliated individuals at worldwide posts, be turned over to him.[17] How the applications, any related documentation, and the ultimate issuance or denial of visas for STS Jewels-sponsored applicants applying in posts other than the Toronto consulate are material to his defense is a complete mystery. Defendant Agrawal's asserted materiality arguments that these items would assist in the determination of whether such elements of bribery as "lawful duty" and "official act" existed in the case and whether he improperly received any special favors from Defendant O'Keefe, as well as assisting him in cross-examining government witnesses, do not support his enunciated request for this information.

### 4. Requests for Information about Possible Gratuities Involving Toronto Employees

Defendant Agrawal has requested any information about whether any Toronto consulate employee has ever received anything, including a photograph or autograph, from any individual,

---

[16] In light of the passage of time, the government currently has information that four additional STS Jewels-affiliated individuals have been processed for visas at worldwide posts during 2007.

[17] These visa applicants' files are scattered throughout posts worldwide, oftentimes in storage. Therefore, obtaining the physical files would be extremely onerous. Moreover, despite Defendant Agrawal's interest in possessing all of these materials, substantial confidentiality issues are raised by this request, including the release of names, locations, and dispositions of the visa applications.

including any entertainment or sports celebrity, who requested a visa or submitted a request for an expedited visa interview appointment. Furthermore, in order to facilitate this request, Defendant Agrawal requests that the government conduct searches and inspections of all consulate computers, offices, and desks, and request employees of the consulate to collect and provide such items. See Proposed Order at ¶ 7. It is far from clear how this request is aimed at obtaining information that is material to the defense in this bribery and conspiracy case.

The conduct of other consulate employees is not the subject of this case. Even assuming that other consulate employees properly or improperly obtained "anything of value" from a visa applicant, this information would not necessarily be readily apparent from the information requested by Defendant Agrawal. For instance, an autograph, in and of itself, may have no significance and no relationship to whether that employee was even involved in handling the visa request of the "autographer." Moreover, even if another consulate employee engaged in misconduct in receiving some sort of improper gift or service from a visa applicant, this fact would not excuse Defendant O'Keefe's indicted conduct of accepting airfare, hotel accommodations, and jewelry, in return for expediting the interview appointments of STS Jewels-sponsored individuals and for guaranteeing the issuance of those visas. Defendant O'Keefe had an ethical and legal duty not to become involved in the visa process of someone with whom he had a personal relationship like Defendant Agrawal. This means he should not have expedited the appointments of the STS Jewels individuals, should not have interviewed them, and should not have been involved in the decision making process as to whether they were granted or denied a visa. Whether another employee engaged in the same type of conduct is immaterial.

Not surprisingly, Defendant Agrawal's asserted materiality arguments that these items

would assist in the determination of whether such elements of bribery as "lawful duty" and "official act" existed in the case and whether he improperly received any special favors from Defendant O'Keefe, as well as assisting him in cross-examining government witnesses, do not support his enunciated request for information.

Furthermore, searches of consulate computers would involve the same factors and limitations as discussed earlier in the discussion of electronic searches of e-mails from the fourteen North American posts. The burden would even be greater because Defendant Agrawal seeks to search every computer in the Toronto consulate. Moreover, devising a method of locating responsive materials like graphics – for instance, a photograph with a sports figure – would be an almost impossible task. In addition, the searcher would have to make an initial determination that the person in the photograph was even a visa applicant or that some other item was attributed to a visa applicant. Furthermore, gathering up such items like photographs and memorabilia would not address the issue of whether these items were received from a visa applicant rather than obtained in an entirely different context.

## IV.  CONCLUSION

The format and substance of Defendant Agrawal's requests for discovery are not reasonably calculated to obtain information that is material to his defense. Consequently, the requests set forth in his Proposed Order should be denied.

WHEREFORE, for the foregoing reasons, the United States respectfully requests that the defendant's motion to compel discovery be denied.

                                          Respectfully submitted,

                                          JEFFREY A. TAYLOR
                                          United States Attorney
                                          D.C. Bar Number 498610

By: _____
       BRENDA J. JOHNSON
       DENISE CHEUNG
       Assistant United States Attorneys
       National Security Section
       555 4th Street, N.W. – 11th Floor
       Washington, D.C. 20530

February 9, 2007