IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>v.    )<br>)<br>MICHAEL JOHN O'KEEFE, SR. and )<br>SUNIL AGRAWAL, )<br>)<br>Defendants.    ) | Criminal Case No 1:06-cr-00249-PLF |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION FOR LEAVE TO TAKE FOREIGN DISCOVERY
AND FOR ISSUANCE OF A LETTER ROGATORY**

The theory of the prosecution in this case is that *approving* and *scheduling* an expedited visa interview appointment is an official act under 18 U.S.C. § 201, which Defendant Agrawal bribed Defendant O'Keefe to undertake on his behalf. However, the discovery to date suggests that these scheduling decisions were handled in such a *pro forma* manner that they could not constitute an official act under the bribery statute. Indeed, it appears that expedited appointments were so routine and ministerial that consulate and embassy personnel who were not even U.S. citizens—*e.g.*, secretaries and administrative staff—routinely approved and scheduled expedited appointments.

The defense is seeking the testimony of the Canadian secretaries and administrative staff who were involved in scheduling expedited visa interviews because such evidence is indispensable to our case. The United States already has conceded that the "internal policies and procedures [regarding expedited appointments] are not necessarily codified or written down in any format," 1/23/07 Ltr. from B. Johnson to T. Green, at 4 **(Ex. 3)**. Therefore, documents cannot tell the whole story because records do not exist regarding many expedited

1

appointments. *See id.* at 6 ("requests for expedited visa interviews can occur by *telephone*, facsimile, or *in person*) (emphasis added).

Defendants are making this request now – even though the government has not concluded its document production – in the interests of expediency and efficiency. In particular, the defendants wish to proceed immediately to secure the testimony of witnesses we already <u>know</u> are critical to the defense. However, because the government is still producing and reviewing substantial amounts of written discovery, it is possible (if not likely) that defendants will identify other witnesses that we will seek to depose. Accordingly, the defense reserves the right to file additional motions for leave to take foreign discovery as expeditiously as possible if and when it determines, based on discovery produced, that other material witnesses are unavailable for trial.

I.  BACKGROUND

   A.  **Foreign Citizen Secretaries Granted Expedited Appointments**

The defense has consistently maintained that Canadian secretaries and assistants at the Toronto consulate played a central role in granting expedited visa appointment interviews.[1] On the eve of the March 22, 2007 motion to compel hearing, the government confirmed this fact by producing to the defense an appointment calendar that was maintained by Pat Haye, a Canadian secretary at the U.S. consulate in Toronto. The calendar demonstrates that Ms. Haye actually exercised discretion and granted expedited visa interview appointments, even though she was not a consular officer or a U.S. citizen. 3/21/07 Ltr. from AUSA Johnson to T. Green and B. Grimm (**Ex. 4**). The government also acknowledged that

---

[1] The defense believes that non-U.S. citizens in ministerial positions—including secretaries and third-party contractors—played similar roles at other consulates, and had central roles in administering the scheduling and expediting of visa interview appointments. To the extent that the circumstances at the Toronto consulate were not an anomaly, but were in fact consistent with overall State Department policy, that would further undermine the prosecution's core contention regarding the *quid pro quo* at issue in this case.

> [D]uring the period that Michael Schimmel was Non-Immigrant Visa ("NIV") Chief in Toronto, he authorized a foreign service national, Pat Haye, to retrieve facsimiles for expedited appointments *and to make certain determinations as to whether an expedited appointment should be granted.* At times, Ms. Haye would pass on all expedited appointment requests to him. However, on other occasions, *pursuant to her delegated authority, she unilaterally granted expedited interviews for emergencies and business reasons.* Ms. Haye could only approve appointment requests, not deny them, and would forward on any expedited appointment requests to Mr. Schimmel if she was unsure about whether the request should be approved or denied. Mr. Schimmel would then review the requests and initial the appropriate action item on the blue slip to reflect his determination decision.

*Id*. (emphasis added). Subsequently, the government disclosed that in addition to Ms. Haye, Jane Boyd—another Canadian citizen secretary at the U.S. consulate in Toronto—screened expedited visa interview requests and kept a calendar of "special interest cases, including cases involving members of foreign missions and consulates and O and P visa applicants, and Canadian citizens applying for A and G visas." *See* 4/13/07 Ltr. from AUSA Johnson to T. Green and B. Grimm (**Ex. 5**).[2]

Based on the discovery produced, and upon Mr. O'Keefe's own knowledge and experience, the defense has identified four Canadian citizens who are believed to have information critical to the defense: Ms. Jane Boyd, Ms. Althea Brathwaite, Ms. Maribel Ebona, and Ms. Patricia Haye. (*See* **Exhibit 1** for a summary of these individuals' roles and anticipated spheres of knowledge.) These individuals have important testimony to provide about the practices and procedures, during the time in question, for reviewing and approving expedited visa interview appointments. A number of these individuals actually made decisions and

---

[2] In that same letter, the government reveals that the Toronto consulate employs a third-party vendor (NuComm International) to schedule non-immigrant visa appointments for the consulate since December 12, 2005, and that in 2006 "NuComm instituted a mechanism in its electronic scheduling system which allows the company to determine which appointments were submitted as expedited appointments by the consulate in Toronto." *Id*. The defense believes that in certain situations, NuComm may have been authorized to reschedule or expedite appointments.

participated in the process by which expedited visa interview appointments were granted. At a minimum, the testimony of these witnesses will establish that (1) scheduling an expedited interview appointment is not an official act under 18 U.S.C. § 201, and (2) expedited appointments were so routinely and easily obtained in Toronto that the evidence undercuts the inference of a *qui pro quo* based upon expedited appointments.

### B. The Government Has Not Made the Individuals Available for Interview

During the March 22, 2007 motion to compel hearing, counsel for defendants raised the need to have access to Canadian witnesses. *See* Hr'g. Trans. at 45-47, 49-55. Following that hearing, counsel for the United States offered to set up interviews with Pat Haye and other Canadian employees of the consulate.[3] Defense counsel believed that this offer would resolve any preliminary issues regarding access to these witnesses. Accordingly, on April 27— the day that the Court issued its Memorandum Opinion and Order on the motion to compel— counsel for Mr. Agrawal confirmed in writing our request "to interview the following individuals on the earliest possible date in Toronto: Jane Boyd, Althea Brathwaite, Maribel Ebona, Patricia Haye, Michael Niles." 4/27/07 Ltr. from T. Green to AUSA Johnson (**Ex. 6**). Two-and-a-half months later, on June 15, 2007, the government informed counsel for Mr. Agrawal that the individuals had "declined" to participate in interviews. *See* 6/15/07 Ltr. from AUSA Johnson to T. Green (**Ex. 7**).

The extent to which that decision to "decline" was purely voluntary or consistent with the interests of the Justice or State Department is irrelevant to this motion. But, it does beg the question whether these U.S. government employees would have declined a similar interview request had it come from the prosecution, rather than the defense. In any event, because these

---

[3] It also be noted that 10 STS employees made themselves available for pre-trial interviews with the prosecution— regardless of a legal obligation to do so—at the request of Mr. Agrawal.

witnesses are not subject to trial subpoena, and are otherwise unavailable to defendants, defendants cannot obtain information or testimony from these witnesses absent an order from this Court.

## II.     ARGUMENT

### A.     Legal Standard

Federal courts have inherent authority to issue letters rogatory requesting judicial assistance from foreign courts. *See* 28 U.S.C. § 1781(b)(2). Where a criminal defendant has demonstrated that testimony or documentary evidence located in a foreign jurisdiction is material to a case, a district court can issue a letter rogatory to the foreign jurisdiction requesting assistance in obtaining such evidence. *See, e.g.*, *United States* v. *Mejia*, 448 F.3d 436, 445 (D.C. Cir. 2006).

In particular, a district court has authority to seek judicial assistance from a foreign court in compelling the testimony of foreign persons in order to preserve their testimony for trial. *See* 28 U.S.C. § 1781(b)(2); Fed. R. Crim. P. 15. A defendant should be granted leave to take depositions where there are "exceptional circumstances and [it is] in the interest of justice." *See* Fed. R. Crim. P. 15; 18 U.S.C. § 3498. This circuit finds that factors toward meeting the "exceptional circumstances" burden include "(1) the materiality of the testimony; … (2) the witness's unavailability to appear at trial"; and (3) "some showing, beyond 'unsubstantiated speculation,' that the evidence exculpates the defendant." *See United States* v. *Kelley*, 36 F.3d 1118, 1124-25 (D.C. Cir. 1994); *see also United States* v. *Salim*, 855 F.2d 944, 948 (2d Cir. 1988); *United States* v. *Drogoul*, 1 F.3d 1546, 1552 (11th Cir. 1993) ("When a substantial likelihood exists that the prospective deponents will be unavailable for trial and their

testimony is highly relevant to a central issue in the case, justice generally requires preservation of that testimony.").[4]

### B. The Testimony of the Consulate Secretaries is Material to the Defense

The testimonies of the witnesses listed in **Exhibit 1** are highly material to the defense because these witnesses have indispensable knowledge going to the core issue in the trial of this case. Specifically, the bribery allegation is that Mr. Agrawal provided things of value to Mr. O'Keefe in exchange for O'Keefe circumventing "*established procedures for scheduling visa interview appointments* and obtain[ing] expedited visa interview appointments and expedited issuance of visas, thereby saving … time and money." Indictment, ¶ 9.B (emphasis added). To the extent that virtually any visa applicant could obtain an expedited interview by contacting a secretary—which is essentially what these witnesses will concede—the prosecution's allegation that Mr. Agrawal bribed a consular official to obtain such appointments is significantly, if not fatally, undermined. The core questions of motive, *quid pro quo* and entire government case-in-chief would be materially affected by the presence, or absence, of this testimony. In fact, the government has never disputed that these individuals have knowledge regarding expedited appointment procedures, and the government's offer to make these witnesses available implicitly confirms that these witnesses possess material information.

Moreover, to the extent that Mr. O'Keefe is accused of circumventing "established procedures" for scheduling interview appointments, the defense is entitled to

---

[4] There is no mechanical rule for determining when these criteria have been met, and courts have permitted foreign depositions in criminal trials in a wide range of factual circumstances. *See, e.g.*, *United States* v. *Njock Eyong*, 2007 WL 1576309 *1 (D.D.C. May 30, 2007) (granting defendant's motion to take foreign depositions); *United States* v. *Johnpoll*, 739 F.2d 702 (2d Cir. 1984) (permitting depositions of Swiss nationals located in Switzerland and unwilling to travel to United States); *Drogoul*, 1 F.3d 1546 (permitting depositions of Italian nationals located in Italy and unwilling to travel to United States); *United States* v. *Steele*, 685 F.2d 793, 809 (3d Cir. 1982) (permitting deposition of witnesses located in Bermuda and unwilling to travel to the United States); *Farfan-Carreon*, 935 F.2d 678 (permitting deposition of Mexican national located in Mexico and unwilling to travel to United States); *United States* v. *Trout*, 633 F.Supp. 150 (N.D. Cal. 1985) (permitting deposition of Brazilian national located in Brazil and unwilling to travel to United States).

explore through the testimony of these witnesses exactly what those "established procedures" were. The government already has conceded, and the Court has acknowledged, that "procedures [regarding expedited appointments] may not [have] be[en] formalized" or written down. *See* Mem. Opinion and Order, at 5 (April 27, 2007); 1/23/07 Ltr. from AUSA Johnson to T. Green **(Ex. 3)** ("Various internal policies and procedures are often established by the management of each respective consulate office…. [and] are not necessarily codified or written down in any format."). Testimony from the only neutral witnesses with first-hand knowledge of those "procedures"[5] is vital to the defense.

The United States does not dispute that Canadian citizens (*i.e.*, secretaries) employed at the Toronto consulate scheduled expedited appointments. In other words, the individuals we seek to depose administered the so-called "policies and procedures" at issue in this case by liberally and unilaterally granting expedited interview requests. *See, e.g.*, 3/21/07 Ltr. from AUSA Johnson to T. Green and B. Grimm **(Ex. 4)**. The individuals the defense seeks to depose have first-hand, material testimony that is crucial to the defense.

  C.  **These Witnesses Will Provide Exculpatory Evidence**

"When Rule 15 depositions are requested by an accused, materiality has the same meaning the Supreme Court gave the term in *Brady* v. *Maryland* … and its progeny, namely, that the evidence or testimony must be exculpatory, and not 'corroborative or cumulative of other evidence.'" *See United States* v. *Rosen*, 240 F.R.D. 204, 209 (E.D.Va 2007) (internal citations omitted). Under *Brady*, the prosecution must disclose all evidence that is favorable or exculpatory to the accused, *see United States* v. *Safavian*, 233 F.R.D. 12, 16-18 (D.D.C. 2005), and the term "favorable" broadly includes any information "that relates to guilt or punishment

---

[5] Accordingly, the government's purported expert witness, Abigail Rupp (someone that has never worked at the Toronto consulate) has no basis for testifying about the expedited appointment procedures and policies that were in place in Toronto. *See* 1/25/07 Ltr. from AUSA Johnson to T. Green **(Ex. 8).**

7

and that tends to help the defense by either bolstering the defense case or impeaching prosecution witnesses," *id*. at 17.

The testimony of the witnesses at issue will provide the defense with "favorable" or "exculpatory" information under the *Brady* standard. *First*, the testimony of these witnesses is essential to undermining the official act element of the bribery statute. The government has already disclosed that at times Canadian citizen employees of the consulate unilaterally reviewed and approved expedited appointment requests. The defense should be permitted to establish the additional facts—by deposing the *de facto* administrators of the expedited appointments procedures—to show that expediting a visa interview appointment was such perfunctory function that it could not constitute an official act under 18 U.S.C. § 201. *See United States* v. *Valdes*, 475 F.3d 1319 (D.C. Cir. 2007) (a detailed factual analysis of the alleged official acts was essential in holding that the public official had not committed an official act under the gratuities statute).

*Second*, the testimony of the Canadian citizen secretaries will undermine any inference of a *quid pro quo* arrangement between defendants. Specifically, defendants believe that expedited appointments were so routinely and easily obtained in Toronto that any inference of a *qui pro quo* will be strongly undermined. *See, e.g.*, *United States* v. *Gatling*, 96 F.3d 1511, 1522 (D.C. Cir. 1996) ("Payments to a public official for acts that would have been performed in any event ... are probably [not] bribes."). The testimony of the witnesses will therefore be favorable to defendants in establishing that STS Jewels' expedited appointment requests were comparable to other requests and would have been granted, even if Mr. Agrawal and Mr. O'Keefe had never met or interacted with one another.

*Finally*, the testimony of the Canadian citizen secretaries is not merely cumulative or corroborative of other evidence. The government already has admitted that the policies at the core of this case, as well as the actual history of expedited interview requests and approvals, are not maintained in writing. The witnesses are the only source of information and knowledge regarding the procedures in question and the day-to-day implementation of those policies and procedures.

### D. The Witnesses Are Unavailable

The required showing of "exceptional circumstances" under Rule 15 generally is "equated with the unavailability of the witness." *United States* v. *Poindexter*, 732 F. Supp. 142, 156 (D.D.C. 1990). Because a witness's "availability" is governed by Federal Rule of Evidence 804(a), a witness is unavailable when he or she "is absent from the hearing and the proponent of a statement has been unable to procure the declarant's attendance by process or other reasonable means." Fed. R. Evid. 804(a); *see also Poindexter*, 732 F. Supp. at 156. This test is satisfied when a witness is outside the Court's jurisdiction (*e.g.*, when the witness is a foreign national located abroad) and refuses to travel to the United States to testify. *See, e.g.*, *Drogoul* at 1552-53; *United States* v. *Farfan-Carreon*, 935 F.2d 678, 680.

Furthermore, the showing of unavailability "need not be conclusive before the deposition can be taken" because "[i]t would be unreasonable and undesirable to require the [party seeking the deposition] to assert with certainty that a witness will be unavailable for trial months ahead of time, simply to obtain authorization to take his deposition." *United States* v. *Korogodsky*, 4 F.Supp.2d 262, 266 (S.D.N.Y. 1998) (quoting *Drogoul*, 1 F.3d at 1553). Representations of counsel may provide an adequate basis to demonstrate the unavailability of a witness, *see, e.g.*, *United States* v. *Sindona*, 636 F.2d 792, 804 (2d Cir. 1980), and the Court "may allow a deposition in order to preserve a witness' testimony, leaving until trial the question

9

of whether the deposition will be admitted as evidence," *United States* v. *Njock Eyong*, 2007 WL 1576309 *1 (D.D.C. May 30, 2007) (granting defendant's motion to take foreign depositions).

*First*, each of the four witnesses in question here clearly are unavailable. *First*, each of the four witnesses resides in Canada and is a Canadian citizen. Thus, all of the witnesses are outside of the Court's jurisdiction and the defense has no means to compel their attendance at trial.

*Second*, the defense has attempted to secure the participation of these witnesses in these proceedings. Prior to the government's offer to make such witnesses available for interviews, defense counsel spoke with Pat Haye on at least two occasions in an attempt to interview her and request her participation at trial. She would not agree to make herself available to the defense. Subsequent to its offer to make these witnesses available for interview, the government represented in writing that each of the witnesses would "decline" to participate in an interview or otherwise make themselves available to the defense. For purposes of Rule 15, these witnesses are unavailable. *See United States* v. *Rosen*, 240 F.R.D. 204, 208 (E.D.Va 2007) ("[W]itnesses reside abroad, will not come to the United States to be deposed, and will not consent to submit to depositions in Israel. They are, therefore, unavailable by any measure.").

\* \* \* \* \*

This motion readily satisfies all elements of the *Kelley* test because: (1) the testimony sought is material; (2) the witnesses are unavailable to appear at trial; and (3) defendants have made a showing—from a variety of sources, including admissions by the government—that the testimony would tend to be exculpatory. *See United States* v. *Kelley*, 36 F.3d 1118, 1124-25 (D.C. Cir. 1994). The defendants should be permitted to take these depositions to preserve the testimony of otherwise unavailable Canadian witnesses, pursuant to a letter rogatory to the appropriate Canadian court witnesses.

### III.     CONCLUSION

For the foregoing reasons, defendants respectfully request that the Court grant their Motion for Leave to Take Foreign Discovery and For Issuance of a Letter Rogatory.

Dated:  July 28, 2007                              Respectfully submitted


_____/s/_____
Thomas C. Green (D.C. Bar #14998)
Mark D. Hopson (D.C. Bar #394338)
David J. Ludlow (D.C. Bar #489136)
SIDLEY AUSTIN LLP
1501 K Street, NW
Washington, DC 20005
(202) 736-8000
(202) 736-8711 (fax)

*Counsel for Sunil Agrawal*


_____/s/_____
Bernard S. Grimm
LAW OFFICES OF BERNARD S. GRIMM
503 D Street, NW
Suite 250
Washington, DC 20001
(202) 371-0300
(202) 986-5475 (fax)

*Counsel for Defendant Michael John O'Keefe*