

U.S. Department of Justice
United States Attorney
District of Columbia

*Judiciary Center*
*555 Fourth St. N.W.*
*Washington, D.C. 20530*

# USAO-DC
# FAX
Cover

| | | | |
|---|---|---|---|
| To: | Thomas Green<br>Bernard Grimm | From: | Tiffany Walker for AUSA<br>Brenda Johnson |
| Fax: | 202-736-8711<br>202-986-5475 | Phone: | 202-514-7304 |
| Date: | January 23, 2007 | | |
| Re: | | | |
| Page(s): | 13 including cover | | |

COMMENTS:

## U.S. ATTORNEY FACSIMILE COMMUNICATION

**WARNING: Information attached to this cover sheet is U.S. Government Property. If you are not the intended recipient of this information, disclosure, reproduction, distribution, or use of this information is prohibited. Please notify the originator immediately to arrange for proper disposition.**



**U.S. Department of Justice**

Jeffrey A. Taylor
United States Attorney

*District of Columbia*

---

Judiciary Center
555 Fourth St., N.W.
Washington, D.C. 20530

January 23, 2007

BY MAIL AND FACSIMILE (202) 736-8711

Thomas C. Green, Esquire
Sidley Austin LLP
1501 K Street, N.W.
Washington, D.C. 20005

      Re:   United States v. Sunil Agrawal, Criminal No. 06-249-02 (PLF)

Dear Mr. Green:

      This correspondence is in response to your letter of December 22, 2006, and the supplemental letter of January 5, 2007, in which you request additional discovery.

Oral Statements

      On November 6, 2006, the government provided the substance of two oral statements made by Defendant Agrawal on August 24, 2006, and September 26, 2006. The government has learned that Special Agent Jeffrey A. Ford with the Diplomatic Security Service of the United States Department of State, in an attempt to locate Defendant Agrawal, had a telephone conversation with your client shortly before August 24, 2006. Agent Ford had called the STS Jewels, Inc. ("STS") New York office, asking for Defendant Agrawal. Agent Ford represented to an STS employee that he was with the Department of Homeland Security, that he was looking into the statuses of various STS employees and needed to talk to Defendant Agrawal. Defendant Agrawal made contact with Agent Ford shortly thereafter via telephone and stated his intentions of being cooperative. Agent Ford stated that he may need to make contact with Defendant Agrawal again.

      The substance of the August 24, 2006, conversation has been set forth in the November 6, 2006, correspondence. In addition to the statements already transmitted to you, during the course of Agent Ford's conversation with Defendant Agrawal on August 24, 2006, Defendant Agrawal stated that he was willing to come back to the United States to discuss the STS employee visa issue, and Agent Ford said that they had an agent located in London who could contact him there.

The government is unaware of any additional oral statements made by your client. The oral statements of your client were not memorialized in any writing. Enclosed is an email sent by Special Agent Ford regarding his conversations with Defendant Agrawal during the week of August 24, 2006.

Written or Recorded Statements

The only written or recorded statements of Defendant Agrawal in this case are in the form of electronic communications by email and facsimile that were previously provided to you by the government on or about October 2, 2006, and December 7, 2006.

Email File Formats

You requested an explanation for why "emails collected from defendant O'Keefe's computer were produced in several different file formats (*e.g.*, .txt, .doc, .html, etc.), and why unique emails were apparently copied-and-pasted successively into editable Microsoft Word or text files, instead of produced as separate files in the form in which they are normally maintained."

As a general matter, the goal behind the formatting of all of the electronic communications in this case was to provide the defense with readable formats of this material. The procedure for obtaining these electronic communications was the following:

On or about April 18, 2006, the hard drives from two computers used by Defendant O'Keefe at the U.S. Consulate in Toronto were received by the Computer Investigations and Forensics Branch ("CIF") via sealed diplomatic pouch. Exact copies of the drives were made, and the forensic analyst, Special Agent John J. Wilbur, worked off of these forensic copies. Using specialized computer software (Encase and FTK) because of encoding issues, Agent Wilbur searched for keywords and found whole and fragmented emails that were stored or viewed on the computer. Agent Wilbur identified emails that showed that Defendant O'Keefe was communicating from work using his Department of State email account, okeefemj@state.gov, and his personal email account, mikeokeefe@rogers.com.

On or about July 21, 2006, the hard drive of the computer used by Defendant O'Keefe in the Toronto Consulate was received by the CIF office. An exact copy of the drive was made, and Agent Wilbur once again worked off that forensic copy. Using the same specialized computer software (Encase and FTK), Agent Wilbur recovered emails and evidence regarding internet searches by Defendant O'Keefe. On or about September 7, 2006, the hard drive of the computer used by Defendant O'Keefe in the Toronto Consulate was received by the CIF office. Once again, Agent Wilbur worked off of a forensic copy that was made using the specialized computer software.

On or about June 3, 2006, Agent Wilbur was provided with a compact disk ("CD") that Yahoo provided pursuant to a search warrant. The CD contained emails in plain text file and

-2-

address book for Yahoo/Rogers account, mikeokeefe@rogers.com. Agent Wilbur reviewed each email on the CD and segregated them according to who they were addressed to, or received from. The messages were not changed, rather they were put into a more readable format.

On or about August 28, 2006, Agent Wilbur was provided with yet another CD from Yahoo after the execution of a second search warrant. The CD contained emails in a plain text file and address book for the account, mikeokeefe@rogers.com.

Defendant Agrawal has been provided with a copy of all of the above sources. As set forth above, the files containing electronic communications that were stored on a United States Department of State computer were isolated, and a forensic software was used to place them in a logical and readable format from their encoded original state. The electronic communications received from Yahoo were provided on a CD in plain text. When attempting to copy and consolidate all of these electronic communications, Agent Wilbur used software to format each item in its most readable format. In other words, the emails were placed in categories so as to provide ease of observation, but their substance was not altered in any way.

Other Discovery Requests by Defendant Agrawal

Defendant Agrawal has set forth a number of requests in his December 22, 2006, and January 5, 2007, correspondences regarding discovery that he contends is "material to preparing the defense" under Rule 16(a)(1)(E) of the Federal Rule of Civil Procedure. Defendant Agrawal defines the relevant time period covered by the requests as January 1, 2004, through the present. Defendant Agrawal contends that all of the materials sought are material to his defense because "the government's entire case centers around allegedly improper expedited visa appointment procedures" and that "[t]here is a strong indication that the requested Items will play an important role in uncovering admissible evidence, uncovering the identity of potential witnesses, aiding witness preparation, corroborating testimony, and providing evidence for impeachment or rebuttal" (citation omitted).

As a preliminary matter, Defendant Agrawal faces charges regarding allegations that he conspired to bribe Defendant O'Keefe with travel, gifts, and other personal benefits, in order to avoid established procedures and receive expedited visa appointments for his employees. The government will address each of Defendant Agrawal's requests in order.

(a) All Items related to internal policies and procedures of the State Department and the Toronto Consulate that govern any functions formerly performed by defendant Michael O'Keefe.

In the relevant time period (up to his arrest in August, 2006), Defendant O'Keefe was a foreign service officer and occupied the position of Deputy Chief of the Non-Immigrant Visa Unit at the Toronto Consulate.

A witness from the Department of State will testify at trial regarding the training and

-3-

duties of a consular officer and such topics as a definition of visas in general and non-immigrant visas in particular; a description of different types of visas, including H-1 Bs, Ls, Hs, B1-B2s, etc.; the documents used to apply for visas; visa application procedures; and the visa referral expedited appointment systems. There will be testimony as to how visas were processed at the Toronto Consulate during the relevant time period, as well as about the duties of consular officers and rules and regulations governing foreign service officers.

The Foreign Affairs Manual ("FAM") details many of the policies and procedures of the State Department governing foreign service officers. The manual can be found at www.state.gov. Furthermore, the polices and procedures for the Toronto Consulate office can be found at the same website by clicking on the "Countries" file, then clicking on Canada and following the successive prompts to reach the desired information on such topics as procedures for obtaining visas and expected waiting times.

It is the government's understanding that various internal polices and procedures are often established by the management of each respective consular office. These polices and procedures are not necessarily codified or written down in any format. With this understanding in mind, the government, on or about July 28, 2006, date, solicited these internal policies regarding the processing of non-immigrant visas, from Michael Schimmel, the Unit Chief of the Non-Immigrant Visa ("NIV") Section in the Toronto consulate from May, 2004, to approximately some time in September, 2006.

According to Mr. Schimmel, a person seeking an expedited visa interview appointment would direct the request by fax to the Consular Officer in Charge. Although it was highly unlikely that such a request would be directed to a particular officer by name, all of the requests were normally routed to Mr. Schimmel, as the head of the NIV section, for a determination.

As NIV Unit Chief, Mr. Schimmel would decide whether the case should be moved forward in the queue or not, depending on the circumstances that motivated the request. If the NIV Unit Chief determined that it was in the best interest of U.S. business concerns or some other emergency reason existed to expedite the request, then the request would generally be approved.

From August 15, 2005, until November 21, 2005, Mr. Schimmel served as Acting Chief of the Consular Section and NIV Unit Chief at the same time. During this time period, it would have been acceptable for another officer – most likely the Deputy NIV Chief – to make such a determination for requests of that nature. Additionally, when Mr. Schimmel took annual leave, another officer would make the determination. (Mr. Schimmel was on annual leave for a one week period in March, 2006, and a four-day period in December, 2005.) Outside of these specific instances, however, it would have been highly unusual for any other officer to rule on such a request.

(b)   All Items related to visa applications, requests for visa interview appointments, requests for expedited visa interview appointments, and grants and/or denials

-4-

thereof for STS Jewels, Inc. employees.

This request implicates a variety of different issues. First, the government has already provided to you all items related to the STS Jewels, Inc. ("STS") employees who applied for visas from the Toronto Consulate from January 1, 2004, to approximately August, 2006. The government believes that information regarding other STS employees who may or may not have received visas and how their applications were processed by other consulate offices is not material or relevant to the defense in this bribery case.

Second, much of this material is not available, or there are bars to obtaining and/or turning the items over to the defense. For instance, the State Department does not have a centralized database or means for ascertaining whether requests for expedited visa interview appointments and their subsequent grants and denials are made. Many consular offices similarly do not possess that information. This is because requests for expedited visa interviews can occur by telephone, facsimile, or in person. The consular officer who receives the request may or may not document the request in any manner. Moreover, even if, for example, a faxed request existed, it would be present in the individual file of the applicant in hard copy, and a physical search of these files would be necessary. It is also very likely that it was not maintained in the file since the request for an interview is not pertinent to the eligibility of the applicant. The burden of having to hand search and copy files is very high and the production of relevant information and/or evidence is highly improbable.

Furthermore, there are a variety of privacy concerns implicated by a request for identifying visa information. For example, specific items related to visa records are specifically protected by Section 222(f) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1202.

In an effort to respond to this request, the government attempted to quantify the number of visa applicants associated with STS in the relevant time period specified by the defense. Approximately eighty-two applicants affiliated with STS applied for visas during this time period. Sixty-five visas were issued, and seventeen were refused. As stated above, obtaining information about expedited visa appointments and their dispositions could only possibly be ascertained by worldwide searches of the files of these applicants.

> (c) All Items related to internal policies and procedures of the various embassies and consulates, and the State Department that relate to visa interview appointments, expedited requests for visa interview appointments, and the discretion, if any, given to pertinent government personnel to either grant or deny such requests.

As noted above in response to Request (a), you have access to information regarding the general policies and procedures of the State Department from the FAM. The specific policy of the Toronto Consulate and the exercise of discretion, if any, is also noted in the government's response. The government believes that items related to "internal policies and procedures of the various embassies and consulates" is not material or relevant to this case, and it would be virtually impossible to gather such evidence were it to exist. As set forth in Rule 401 of the

-5-

Federal Rules of Evidence, "'relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Discretion, if any, afforded to State Department personnel to grant or deny a visa appointment is not relevant to the defense in this bribery case.

> (d) All Items related to requests for expedited visa interview appointments made to the United States consulate in Toronto, Canada, including but not limited to, emails, faxes, letters, notes, memoranda, or other correspondence received by the consulate in Toronto, without regard to which consular officer(s) handled the request.

Again, much of this material is not available, or there are bars to obtaining and/or turning the items over to the defense. The Consulate in Toronto does not have a formalized centralized database or means for ascertaining whether a request for an expedited visa interview appointment was made in a particular case. This is because requests for expedited visa interviews can occur by telephone, facsimile, or in person. The consular officer who receives the request may or may not document the request in any manner. Moreover, even if, for example, a faxed request existed, it may or may not be present in the individual file of the applicant in hard copy, and a physical search of these files would be necessary. The burden of having to hand search and copy files is very high and would not result in information that would be relevant and material to this bribery case.

> (e) All Items related to the responses to requests for expedited visa interview appointments identified in subsection (d), whether sent to the person requesting expedited processing or to any corporation, company, or third party, and without regard to which consular officer(s) handled the request.

As noted above, this information is not available. The response may have been by telephone and there would not be a record of the response. Even if, for example, a faxed request existed, it may or may not be present in the individual file of the applicant in hard copy, and a physical search of these files would be necessary. The burden of having to hand search and copy files is very high and would not result in information that would be relevant and material to this bribery case.

> (f) All Items showing the names of all corporations, companies, and/or individuals who were granted expedited treatment of class H visas at the following embassies and/or consulates: Montreal, Canada; Ottawa, Canada; Toronto, Canada; Vancouver, Canada; Winnipeg, Canada; Mexico City, Mexico; Ciudad Juarez, Mexico; Guadalajara, Mexico; Hermosillo, Mexico; Matamoros, Mexico; Monterrey, Mexico; Nogales, Mexico; Nuevo Laredo, Mexico; Puerto Vallarta, Mexico; and Tijuana, Mexico.

As a factual matter, the consulate offices in Winnipeg, Canada and Puerto Vallarta,

Mexico do not handle visa applications. We have responded above with respect to the Consulate in Toronto. It is the government's position with respect to the remainder of the request that the information sought, were it even to exist, is not material and relevant to this case. In any given month, the Toronto Consulate may have handled over 20,000 applications. There is no way to determine which of those 20,000 applications were expedited, even if a physical search was conducted on each file.

    (g)    All Items from the Department of State showing statistical information – or databases and data compilations from which any statistical information may be compiled – regarding requests for expedited visa interview appointments that were made to any or all of the various United States embassies and/or consulates, including but not limited to, information regarding the number of requests that were granted, denied, or otherwise disposed of.

The State Department does not keep statistical information regarding requests for expedited visa interview appointments. Therefore, we are unable to provide any such information. Each post handles requests in a manner that is consistent with its operations and workload.

    (h)    All Items of the Department of State related to information on the actual or average wait time for visa interview appointments at the various U.S. embassies and consulates (over the relevant time period).

There are 220 posts worldwide that issue visas. There is no available information in one location on the average waiting time for a visa interview appointments. The information regarding the waiting time for appointments for individual embassies and consulates is publicly available on the internet site for each embassy or consulate. Moreover, the average wait time for visa interview appointments at the embassies and consulates worldwide is not material and relevant to the instant bribery case.

    (I)    All Items from the United States Consulate in Toronto, Canada related to any complaints (formal or informal) against Michael O'Keefe, and a copy of Mr. O'Keefe's personnel file.

On November 29, 2006, the government informed you that we provided Defendant O'Keefe with a copy of his personnel file but were not authorized for Privacy Act reasons to provide it to anyone other than Defendant O'Keefe or his representative. Mr. O'Keefe is free to share the file and related documents, including any "complaints," if they exist, with you. Please let us know if Defendant O'Keefe has provided a copy of the file and related documents to you.

    (j)    All Items showing communications or correspondence between Michael O'Keefe and any STS Jewels, Inc. employee.

All items showing communications or correspondence between Michael O'Keefe and

-7-

STS employees in the possession of the government have been previously provided to Defendant Agrawal.

 (k) All Items obtained by the government as the result of surveilling Sunil Agrawal, Michael O'Keefe, any STS Jewels, Inc. Employee, and/or the persons referred to as "exotic dancers" in the Indictment, including identification of the dates and places of the surveillance.

You have been provided with photographs and video footage from law enforcement surveillance of Defendant Agrawal, Defendant O'Keefe, STS employees, and "exotic dancers," which took place from June 3, 2006, through June 6, 2006. Defendant O'Keefe and some of the "exotic dancers" were electronically monitored when they departed from the Toronto, Canada airport on June 3, 2006 and arrived at the Las Vegas, Nevada airport. The parties named in the request were also surveilled at various Las Vegas locations, including the Mirage, the Bellagio, and the Venetian Hotels from June 3, 2006, to June 6, 2006.

 (l) Specific "information as to what specific efforts were made to search for responsive documents, including the extent of the search for responsive documents within the possession, custody or control" of the Justice Department, the State Department, and Department of Homeland Security.

In responding to Defendant Agrawal's many requests, the government has coordinated with the Legal Adviser's Office at the Department of State in an attempt to discover the scope and nature of information that exists, whether such information was easily accessible, and whether there were any legal prohibitions to providing the information requested.

The government has designated items set forth in Defendant Agrawal's January 5, 2007, letter by use of an apostrophe (*).

 (a)* All Items, including but not limited to, emails, faxes, letters, notes, memoranda, or other correspondence directed to any government employee, related to requests for expedited visa interview appointments for class B, F, H, L, M, O or P visas made by any corporation, company, or individual to the following United States embassies and /or consulates: Montreal, Canada; Ottawa, Canada; Toronto, Canada; Vancouver, Canada; Winnipeg, Canada; Mexico City, Mexico; Ciudad Juarez, Mexico; Guadalajara, Mexico; Hermosillo, Mexico; Matamoros, Mexico; Monterrey, Mexico; Nogales, Mexico; Nuevo Laredo, Mexico; Puerto Vallarta, Mexico; and Tijuana, Mexico.

  This request specifically includes, but is not limited to, all communications regarding or pertaining to the Items specified in the previous paragraph which were sent to or from any email address, and in particular, the following email addresses and/or other associated email addresses:

        Montreal-NIV@state.gov (Montreal, Canada)
        ottawacmergencyapp@state.gov (Ottawa, Canada)
        quebecniv@state.gov (Quebec City, Canada)
        TorontoEmpNIV@state.gov (Toronto, Canada)
        Vancouverniv@state.gov (Vancouver, Canada)
        cdjnivs@state.gov (Ciudad Juarez, Mexico)
        visasgdl@state.gov (Guadalajara, Mexico)
        hermoniv@state.gov (Hermosillo, Mexico)
        Consularmatamo@state.gov (Matamoros, Mexico)
        mercons@prodigy.net.mx (Merida, Mexico)
        VisaMexicoEmergencia@state.gov (Mexico City, Mexico)
        MonterreyEmergencias@state.gov (Monterrey, Mexico)
        Nogales7@prodigy.net.mx (Nogales, Mexico)
        NVLVisas@state.gov (Nuevo Laredo, Mexico)
        TijuanaEmergencies@state.gov (Tijuana, Mexico)

    This request also includes, but is not limited to, all facsimile transmissions regarding or pertaining to the Items specified in the previous paragraph which were sent to or from any fax number, and in particular, the following fax numbers:

        613-688-3082 (Ottawa, Canada)
        403-263-2241 (Calgary, Canada)
        514-908-3700 (Montreal, Canada)
        418-692-4640 (Quebec City, Canada)
        416-595-5466 (Toronto, Canada)
        604-685-7175 (Vancouver, Canada)

    The government does not believe that any of the information requested is material or relevant to the instant case. Much of this material is not available, or there are bars to obtaining and/or turning the items over to the defense. For instance, the State Department does not have a centralized database or means for ascertaining whether requests for expedited visa interview appointments and their subsequent grants or denials are made. Similarly, many consular offices and embassies do not possess that information. They may or may not keep records, faxes, letters, etc., regarding requests for expedited visa interviews because the reason for the request is not essential to the determination of whether or not the visa is issued. It only affects how fast a person can see someone at the consulate. As stated previously, requests for expedited visa interviews can occur by telephone, facsimile, or in person. The consular officer who receives the request may or may not document the request in any manner. Moreover, even if, for example, a faxed request existed, it may or may not be present in the individual file of the applicant in hard copy, and a physical search of these files would be necessary. The burden of having to hand search and copy files is very high and the production of relevant information and/or evidence is highly improbable.

    Furthermore, as enumerated before, there are a variety of privacy concerns implicated by

-9-

a request for identifying visa information. For example, specific items related to visa records are specifically protected by Section 222(f) of the INA.

> (b)* All Items related to the government's responses to requests for expedited visa interview appointments identified in subsection (a)*, whether sent to the person requesting expedited processing or to any corporation, company, or third party, and without regard to which consular officer(s) handled the request.

A person, company, corporation or third party requesting an expedited visa interview appointment may or may not have received an "item" in response thereto. However, the requests may have been conveyed on the telephone, and the response may have been via telephone as well. The government does not have any specific information to provide other than what has been previously provided about requests made by STS.

> (c)* All Items, including but not limited to autographs, photographs, electronic images, media files, memorabilia of any kind or thing of value, given to or received by any employee of the U.S. Consulate in Toronto, Canada, from any individual, including any entertainment, television, movie, music, sports or other celebrity who requested any visa or submitted a request for an expedited visa interview appointment. This request specifically includes but is not limited to all autographs, photographs, electronic images or media files, memorabilia of any kind or thing of value, that were provided to or received by Michael Schimmel and/or any other consular official or employee of the Toronto Consulate.

The government believes that the items in this request are not relevant or material to the bribery and conspiracy charges in this case. The defense has not demonstrated that any of the requested information meets a threshold standard for relevance.

> (d)* All Items related to the Department of State's investigation into allegations regarding the tanzanite industry which were raised by the Wall Street Journal article, *Bought, Sold by Militants Near Mine, Tanzanite Ends Up at Mideast Souks* (November 16, 2001).

The government does not believe that the article or any alleged investigation into the Tanzanite industry is relevant or material to the instant case. The Court has recently adopted a definition of materiality, which states that the "evidence at issue may be 'favorable to the accused.'" United States v. Safavian, 233 F.R.D. 12, 16 (D.C. 2005). The defense has not established that an alleged internal State Department investigation has any connection to the bribery and conspiracy charges against Defendant Agrawal.

Rule 404(b) Evidence

At this time, the government does not intend to introduce any 404(b) evidence against either defendant in its case-in-chief.

-10-

### *Brady* Material

The government is aware of its *Brady* obligations and will continue to comply with them.

### *Giglio/Bagley* Material

The government is aware of its obligations to provide this information and will do so in a timely manner in accordance with the law.

### Jencks Act Material

The government will provide information in accordance with its Jencks Act obligations.

The government has attempted to be as responsive as possible to your requests. The government will continue to provide discovery to which you are entitled as it becomes available and continue to exercise due diligence in providing discovery.

The government requests that all reciprocal discovery likewise be produced on a continuing basis. Any questions regarding these matters, or any other aspect of this case, may be directed to us at (202) 353-4154 and (202) 307-2845, respectively.

Sincerely,

JEFFREY A. TAYLOR
UNITED STATES ATTORNEY

By:    Brenda J. Johnson
Denise Cheung
Assistant United States Attorneys
National Security Section

Attachment

cc:    Bernard Grimm, Esquire

### Johnson, Brenda (USADC)

**From:** Ford, Jeffery A [FordJA@state.gov]
**Sent:** Wednesday, October 04, 2006 11:10 AM
**To:** Johnson, Brenda (USADC)
**Subject:** STS New York visit

Brenda,

As requested here is some info on my conversations with Sunil while we were at STS Jewels in New York.

Background:

On 24 August 2006, Diplomatic Security Service (DSS) Special Agents (SA) Jeff FORD, Joseph SCHULTER, and Joe WHITE traveled to STS Jewels-3000 47th Avenue, 5th Floor, Long Island City, New York-and conducted voluntary, non-custodial interviews with five of the 21 identified beneficiaries. Initial contact started around 1400.

A few things to keep in mind were that we were unable to discuss the case because it had not been unsealed at this time and we knew that Sunil was out of the country and feared he would not return if he knew of the arrest warrant.

Rita Sharma escorted us to an interview room where we introduced ourselves and all three agents showed their badges and credentials. We told her that we were Special Agents from the Department of State but she and the rest of the individuals we interviewed always referred to us as being from the "Department of Homeland Security". I did take note of this but never corrected them because before we interviewed each worker we repeated the same identification introduction, badges etc. I think the confusion was because I had made a few "ruse calls" to Sunil and STS earlier in the week to try and decide if Sunil had returned form London stating that I had called from DHS and wanted to do a routine check of employment verification for his visa recipients.

I asked Rita Sharma if I could speak to Sunil and she said he was out of the country on business and would contact him by phone. I asked if I could have his contact Number and she would not give it to me.

Jeff

10/4/2006