## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. CR-06-0249 (PLF)** |
| | : | |
| **v.** | : | |
| | : | |
| **MICHAEL JOHN O'KEEFE, Sr.,** | : | |
| **SUNIL AGRAWAL,** | : | |
| | : | |
| **Defendants** | : | |

### GOVERNMENT'S OPPOSITION TO DEFENDANT AGRAWAL'S
### MOTION TO DISMISS COUNTS OF THE INDICTMENT

The United States of America, by and through the United States Attorney for the District of Columbia, respectfully opposes Defendant Sunil Agrawal's motion to dismiss. The defendant frames his dismissal motion in terms of an alleged constructive amendment of the Indictment by the government. Defendant Agrawal is charged with one count of conspiracy in violation of 18 U.S.C. § 371 and two counts of bribery in violation of 18 U.S.C. § 201(b)(1) and (2). The charged conduct involves Defendant Agrawal's provision of things of value to Co-Defendant Michael John O'Keefe, Sr., with an intent to influence Co-Defendant O'Keefe in his official duties as a consular officer at the U.S. Consulate in Toronto, Canada with respect to the handling of expedited visa appointments <u>and</u> the granting of visas to applicants sponsored by Defendant Agrawal. There has been no constructive amendment of the Indictment, and the defendant's motion is therefore without merit and should be denied. In support of this Opposition, the government states the following:

### I.  BACKGROUND

### A.  Factual Background

Defendant Agrawal is the chief executive officer ("CEO") of STS Jewels, Inc., which

specializes in designing, manufacturing, and distributing gems and jewelry. Defendant Agrawal has been the CEO of STS Jewels since 1996. The company has worldwide operations and employs a large number of foreign nationals who often need visas in order to travel to the United States.

Co-Defendant O'Keefe worked as a consular officer at the U.S. Consulate in Toronto, Canada from July, 2003, up to the time of his arrest in August, 2006. His duties included reviewing visa applications, conducting in-person interviews of visa applicants, and making visa issuance determinations. A United States visa is a travel document which is authorized by a consular officer working for the U.S. Department of State. It allows the bearer to come to the United States and apply for admission into the country. In order to obtain a visa to the United States from Canada, a visa applicant must schedule an appointment at an appropriate U.S. embassy or consulate. The scheduling of the appointment is based upon a given post's waiting time, as well as whether an applicant's request for an expedited appointment is approved by the post. During the scheduled appointment, the applicant must, among other things, be interviewed by a consular official and present evidence of qualification for the visa.[1] The final decision as to whether a visa is issued or denied is up to the interviewing consular officer, who makes the determination based on experience, information set forth in the application, and the applicant interview.

From February 1, 2004, through the time of Co-Defendant O'Keefe's arrest in August,

---

[1]    There are two types of visas – immigrant and non-immigrant. Moreover, there are several categories of visas, for example, H-1B for specialty workers, L-1 for intracompany transfers, and B1/B2 for temporary visitors for business or pleasure. Each category has particular requirements which an applicant must meet in order to obtain the visa.

2006, twenty-two visa applications were submitted to the Toronto consulate on behalf of STS Jewels-affiliated persons. In many, if not all of these cases, Defendant Agrawal sent facsimiles specifically addressed to Co-Defendant O'Keefe asking for expedited treatment for these STS Jewels-sponsored persons. When Defendant Agrawal made such a request for expedited treatment, Co-Defendant O'Keefe routinely granted them and scheduled expedited appointments. Moreover, Co-Defendant O'Keefe personally handled these STS Jewels applicants and issued twenty-one of these twenty-two visas.[2]

### B.  Procedural Background

On September 27, 2006, Defendant Agrawal was arraigned on an Indictment charging him with one count of conspiracy, in violation of 18 U.S.C. § 371, and two counts of bribery, in violation of 18 U.S.C. § 201(b)(1) and (2). As set forth in Count 1 of the Indictment, the objects of the conspiracy were:

> A.    for [Co-Defendant O'Keefe] to receive travel, gifts, and other personal benefits **in exchange for issuing visas to benefit defendant [Agrawal] and his business, STS Jewels.**

---

[2]    Defendant Agrawal, but not STS Jewels, served as a contact for the visa application in the Toronto consulate of an individual who was not then an employee of STS Jewels in January, 2005. Because STS Jewels was not listed as the petitioner or employer of this individual, this individual's application is not included in the overall number of twenty-two STS Jewels-sponsored applications discussed above. Information regarding this individual has already been disclosed to the defense. With regard to this individual, Defendant Agrawal notified Co-Defendant O'Keefe that the applicant's appointment had been "set by normal channels" and stated that Co-Defendant O'Keefe had asked Defendant Agrawal to remind him about the appointment for this applicant a few days in advance. See Indictment at ¶ 11(15). Moreover, after this particular applicant was seen by a consular officer other than Co-Defendant O'Keefe, Co-Defendant O'Keefe immediately notified Defendant Agrawal that this individual's visa had been granted but that the individual had failed to request Co-Defendant O'Keefe by name when he came in the consulate.

B.    for defendant [Agrawal] to avoid established procedures for scheduling visa interview appointments and **obtain expedited visa interview appointments and expedited issuance of visas**, thereby saving him, his business and his employees time and money.

Indictment at ¶ 9(A) & (B) (emphasis added).  The Indictment further describes how Defendant Agrawal and Co-Defendant O'Keefe frequently communicated with one another regarding the scheduling of expedited appointments and the handling and issuance of visas for STS Jewels persons, as well as the provision of trips and jewelry paid for by Defendant Agrawal and bestowed upon Co-Defendant O'Keefe.

Count 2 of the Indictment states that Co-Defendant O'Keefe "did directly and indirectly, corruptly demand, seek, receive, accept, and agree to receive and accept from defendant [Agrawal], things of value . . . in return for being influenced in the performance of an official act, that is, expediting the handling of applications for and issuance of visas to STS Jewels employees in exchange for bribes."  Similarly, Count 3 of the Indictment charges that Defendant Agrawal "did directly and indirectly, corruptly give, offer and promise to give things of value . . . to [Co-Defendant O'Keefe] . . . to influence the public official in the performance of an official act, that is, the expedited handling of applications for and issuance of visas to STS Jewels employees in exchange for bribes."

## II.  ARGUMENT

### A.    The Indictment Clearly Supports Charging Defendant with Bribery Both for the Scheduling of Expedited Visa Appointments and for the Issuance of Visas

The Indictment against Defendant Agrawal returned by a United States District Court for the District of Columbia grand jury has not been constructively amended or broadened in any way. Contrary to Defendant Agrawal's assertions otherwise, the bribery and conspiracy charges

against him are, and have been, clearly spelled out since the inception of the case.  The counts revolve around Defendant Agrawal's provision of things of value to Co-Defendant O'Keefe with an intent to influence Co-Defendant O'Keefe in his official duties regarding the scheduling of expedited visa appointments <u>and</u> the granting of visas to STS Jewels applicants.  The Indictment clearly "contains the elements of the offense intended to be charged," "sufficiently apprises the defendant of what he must be prepared to meet," and "shows with accuracy to what extent he may plead a former acquittal or conviction" in case any other proceedings are taken against him for a similar offense.  <u>Russell v. United States</u>, 369 U.S. 749, 763-4 (1962) (citations omitted).

As stated in <u>United States v. Sun-Diamond Growers</u>, "for bribery there must be a *quid pro quo*-a specific intent to give or receive something of value *in exchange* for an official act."  526 U.S. 398, 404-5 (1999).  Here, Defendant Agrawal intended to provide trips and jewelry to Co-Defendant O'Keefe in exchange for both having STS Jewels-affiliated individuals receive expedited visa appointments and for ensuring that their visas were ultimately issued in a timely manner.

Notwithstanding Defendant Agrawal's contention that "the Indictment does not allege that Mr. O'Keefe improperly granted visas or that Mr. Agrawal sought to obtain visas improperly (Defendant Agrawal's November 17, 2007 Memorandum in Support of Motion to Dismiss the Government's Constructive Amendment of the Indictment ("Defendant's Memorandum") at 2)," not only was the actual issuance of visas to STS Jewels-affiliated individuals clearly set forth as an act for which Defendant Agrawal bribed Co-Defendant O'Keefe in the "Objects in the Conspiracy" portion of the Indictment at ¶9(A) &(B), as recounted above in the Procedural Background section of this Opposition, it was also in the "Manner and Means" portion of the

5

Indictment as well.  See, e.g., Indictment at ¶10E-F (referencing that STS visa applicants met with Co-Defendant O'Keefe, that Co-Defendant O'Keefe "ensured to the best of his ability" that he reviewed the applications and personally interviewed each STS Jewels visa applicant, and that Co-Defendant O'Keefe issued 21 visas to STS Jewels persons).  Moreover, each visa issuance for an STS Jewels-affiliated person was listed as an overt act in the Indictment.  See id. at ¶11(1), (13), (25), (26), (29), (34), (36), (48), (59), and (65).

Count 2 of the Indictment uses the language "in return for being influenced in the performance of an official act, that is, expediting the handling of applications for and issuance of visas to STS Jewels employees in exchange for bribes," while Count 3 states, "to influence the public official in the performance of an official act, that is, the expedited handling of applications for and issuance of visas to STS Jewels employees in exchange for bribes."  Defendant Agrawal criticizes that the counts use the wording "an official act" as opposed to "official acts."  However, the description provided in the counts contemplates a number of official acts, including the timely approval of expedited appointments, facilitation of the appointment process, and ultimate granting of the visas.  Furthermore, the use of the phrase "handling of applications for" encompasses a variety of actions, such as the actual scheduling of appointments, the processing of the visa applications, the conducting of a consular officer interview of the applicant, and the final determination of whether to issue the visa.

The Indictment is replete with evidence of not only Co-Defendant O'Keefe's granting of expedited appointments to STS Jewels-sponsored individuals but also of his actually handling and issuing visas to these persons to benefit Defendant Agrawal.  For example, as set forth in the Indictment at ¶11(31):

On or about August 28, 2005, defendant **MICHAEL JOHN O'KEEFE, Sr.** sent

defendant **SUNIL AGRAWAL** the following electronic communication:

> Sunil, I was happy to interview [PKS] and his family for the H1 visa.... **I will be happy to issue the visas to your other H1 holders**. I know your company to be strong and you to be an honorable man, so I have no problem with these cases. Just send me a fax, like the last time, and I will waive the appointment and then adjudicate the case myself...................... I am rather stressed out over this and work. I really need a vacation. I have been a diplomat for 22 years and I find myself growing tired of much of the argument over visas. The young Vice Consuls who work for me seem to be determined to find problems. They wanted to turn down one of your employees because he was in the jewelry industry and "everyone knows that al-Qaeda [sic] uses to [sic] jewelry industry to raise funds." Needless to say I overruled the decision and explained to them that major gem importers, such as STS are not being used by al-Qaeda[sic]. Thank you aging [sic] for that trip to NYC. Even with the snow, spending two days with A[___] and M[___], showing them the city, really helped me to relax. Sorry I didn't mean to go on about my problems. Regarding the visas just drop me an e-mail in advance so that I know to expect a fax. I don't foresee any problems as all of your cases in the past have been clearly approvable. Keep well, Mike O'Keefe.

There can be no question that the actual issuance of visas to STS Jewels persons is conduct

encompassed by the conspiracy and bribery charges. See, e.g., Indictment at ¶9A (one object of

the conspiracy was "for [Co-Defendant O'Keefe] to receive travel, gifts, and other personal

benefits in exchange for issuing visas to benefit defendant [Agrawal] and his business, STS

Jewels."). Moreover, there can be no question that the ultimate issuance of visas was an "official

act" expressly provided for in the Indictment.

**B.    Defendant Agrawal's Actions in Soliciting the Issuance of Visas Constitutes Criminal Conduct Under the Bribery Statute**

Defendant further argues that "[e]ven construing the Indictment liberally, the grand jury

has not charged that Mr. Agrawal bribed Mr. O'Keefe to issue visas that should not have been

granted or to issue visas that were substantively flawed." Defendant's Memorandum at 6. The

7

applicable bribery statute[3] has no such requirement, and all the elements necessary to support a charge of bribery against the defendants involving the official act of issuing visas are set forth in the Indictment.

"An act is done 'corruptly' under this bribery statute if it is performed voluntarily and deliberately and performed with the purpose of either accomplishing an unlawful end or unlawful result or of accomplishing some otherwise lawful end or lawful result by any unlawful method or means."  O'MALLEY, GRENIG, AND LEE, FEDERAL JURY PRACTICE AND INSTRUCTIONS § 27.09 (2007).  Thus, even if the visas would have been issued by another consular official or were otherwise legitimate, the fact that Co-Defendant O'Keefe accepted bribes in order to guarantee their issuance supplies the "corrupt" intent.  See id. ("The motive to act 'corruptly' is ordinarily a hope or expectation of either financial gain or other benefit to one's self, or some aid or profit to another.").  Nor is it a "defense to the crime of bribery . . . that the *[offer] [or] [promise] [demand] [or] [receipt]* of anything of value was made *[to] [by]* the public official to influence an official act which is actually lawful, desirable, or even beneficial to the public."  Id. at §

---

[3]     The bribery statute,18 U.S.C. § 201(b)(1) and (2), criminalizes the following conduct:

> (1) directly or indirectly, corruptly giv[ing], offer[ing] or promis[ing] anything of value to any public official . . . or offer[ing] or promis[ing] any public official . . . to give anything of value to any other person or entity, with intent . . . to influence any official act . . . .; [and]

> (2) being a public official . . ., directly or indirectly, corruptly demand[ing], seek[ing], receiv[ing], accept[ing], or agree[ing] to receive or accept anything of value personally or for any other person or entity, in return for . . . being influenced in the performance of any official act . . . .

27.11.[4] Thus, the government does not have to prove that an unlawful end or result was reached by issuing visas to STS Jewels-affiliated persons. What was unlawful was the payment and receipt of things of value for that official act.

Furthermore, whether all of the STS Jewels-affiliated applicants would have been issued visas right after their interviews with a consular officer (whether the interviews would have been with an "non-bribed" Co-Defendant O'Keefe or any other officer) is far from a foregone conclusion.[5] Their visa applications could very well have been delayed or denied by the consular officer. For instance, at least a few STS Jewels-affiliated individuals would have been denied visas on the day of their interview by a consular officer other than Co-Defendant O'Keefe but for Co-Defendant O'Keefe taking over their cases and proceeding to issue the visas to those individuals. See Letter from B. Johnson to B. Grimm & T. Green of 3/26/07 (redacted), attached as Attachment A; see also Indictment at ¶11(31).

---

[4]    See also United States v. Jannotti, 673 F.2d 578, 601 (3d Cir. 1982), quoting United States v. Labovitz, 251 F.2d 393, 394 (3d Cir. 1958) ("[I]t is neither material nor a defense to bribery that 'had there been no bribe, the (public official) might, on the available data, lawfully and properly have made the very recommendation that (the briber) wanted him to make.'"); United States v. Anderson, 509 F.2d 313 (D.C. Cir. 1974), cert. denied, 420 U.S. 991 (1975).

[5]    Although Defendant Agrawal asserts that the United States Bureau of Citizenship and Immigration Services ("CIS") (formerly the Immigration and Naturalization Service) had already "legally authorized and approved each of the visa applicants to work for Mr. Agrawal's company in the United States (Defendant's Memorandum at 10)," the CIS only makes a determination as to whether a petitioner is eligible to apply for a certain category of visa. But CIS approval only constitutes prima facie evidence of eligibility, not approvability. Interviewing consular officers like Co-Defendant O'Keefe are charged with the responsibility of granting or denying an application for a visa for all applicants – including CIS-approved persons – based upon the totality of information they gather, which includes verifying the identity of the applicant, and the veracity of information provided on the application and by the applicant during an interview. Thus, a consular officer can deny a CIS-approved applicant, and a visa application interview is not merely a rubber stamp of approval.

9

Lastly, Defendant Agrawal also seems to suggest that it is improper for the government to charge him with improperly seeking to influence Co-Defendant O'Keefe regarding the granting and issuance of visas when he has never been substantively charged with a visa fraud violation. As explicitly set forth in its April 4, 2007, correspondence, the government has never charged either Defendant Agrawal or Co-Defendant O'Keefe "with committing visa fraud, in violation of 18 U.S.C. § 1546." See Letter from B. Johnson to T. Green of 4/4/07, at 1, attached as Ex. 1 to Defendant's Memorandum.  The government never ultimately sought to bring any charges against either defendant under 18 U.S.C. § 1546 because the statutory language of 18 U.S.C. § 201 seemed more applicable to the instant situation here – where a consular officer corruptly accepted bribes for expediting the scheduling of interviews for specific individuals and ensuring the issuance of visas to those same individuals.[6]

### III.  CONCLUSION

The Indictment against Defendant Agrawal clearly and sufficiently outlines the charges against him, including the charge that he bribed Co-Defendant O'Keefe to not only expedite visa appointments for individuals sponsored by him, but also to expeditiously grant those visas.

---

[6]    See also United States v. Aguilar, 515 U.S. 593, 616 (Scalia, J., dissenting) (citations omitted) ("It is not unusual for a particular act to violate more than one criminal statute . . . and in such situations the Government may proceed under any statute that applies . . . .").

WHEREFORE, for the foregoing reasons, the United States respectfully requests that the

defendant's motion to dismiss counts of the indictment be denied.

Respectfully submitted,

JEFFREY A. TAYLOR
United States Attorney
D.C. Bar Number 498610


By:

_____/s/_____

BRENDA J. JOHNSON
(202) 353-4154
Brenda.Johnson@usdoj.gov
DENISE CHEUNG
(202) 307-2845
Denise.Cheung@usdoj.gov
Assistant United States Attorneys
National Security Section
555 4th Street, N.W. – 11th Floor
Washington, D.C.  20530

11