ATTACHMENT A



**U.S. Department of Justice**

Jeffrey A. Taylor
United States Attorney

*District of Columbia*

---

*Judiciary Center*
*555 Fourth St., N.W.*
*Washington, D.C. 20530*

March 26, 2007

<u>BY FACSIMILE AND U.S. MAIL</u>

Bernard S. Grimm, Esquire
503 D Street, N.W.
Washington, D.C. 20001

Thomas C. Green, Esquire
Sidley Austin LLP
1501 K Street, N.W.
Washington, D.C. 20005

    Re:  United States v. Michael John O'Keefe, Sr. and Sunil Agrawal,
           Criminal No. 06-249 (PLF)

Dear Mr. Grimm and Mr. Green:

    The government has learned about the following incident regarding the adjudication of the visas of STS-employee ▓▓▓▓▓▓▓▓▓▓▓▓ on May 31, 2005. The original consular officer handling the applications of the ▓▓▓ family was ▓▓▓▓▓. During her interview of the family, ▓▓▓▓ made the following "case memo" notes, which appear on the Consular Consolidated Database ("CCD") printouts of each family member:[1]

> Landed in Canada since 2002, he's [▓▓▓▓▓▓▓▓] in the jewelry business, frequent travel to ▓▓▓▓▓, went to ▓ last year, this is an L1 case. His B1B2 was cancelled at the border and he was told to get an L visa when he attempted to enter US for work in February. Will require ▓▓▓. Says has worked for the company for 3 mos!! Apparently owned his own ▓▓▓▓▓ Company that was acquired by the jewelry business.

    According to ▓▓▓▓▓▓▓, she was in the process of notifying the ▓▓▓▓ that she would be denying their visas on that day pending an additional inquiry when Defendant O'Keefe appeared and stated that he would be taking over the adjudication of the visas because ▓

---

    [1]    The parties were provided with the CCD printouts of the ▓▓▓ family on or about October 2, 2006. Another copy of the printouts is attached to this correspondence.

looked uncomfortable. ▮▮▮▮ deferred to Defendant O'Keefe, who went on to log on the computer ultimately grant the issuance of all three visas on that day.

After taking over the cases from ▮▮▮▮, Defendant O'Keefe added on the following case memo note, which appears directly below ▮▮▮▮ entry:

> He [▮▮▮▮] was working as a consultant since late 2004 for STS Jewels and STS purchased his company in order to get his services. He did consulting with STS both in Canada and in the U.S. Complicated but good case.

▮▮▮▮ was unaware of Defendant O'Keefe's adjudication determination with regards to the ▮▮▮ family until some time after his arrest in this instant case. Upon learning the name STS Jewels, ▮▮▮▮ ran a CCD search and recognized the ▮▮▮ cases as having been adjudicated by her on May 31, 2005 before Defendant O'Keefe took them over. ▮▮ ▮▮▮▮ also recognized the initial case memo notes as being written and entered by her.

Computer forensic information about these case memo entries are set forth below. The "Seq" column refers to the sequence in which the memos were entered.

```
SIT  VISA_CONTROL_NUM       SEQ  DATA_ENTR   DATA_ENTRY  USER_NAME
---  --------------------   ---  ---------   ----------  --------------------------

TRT  2005151 842 0001         1  31-MAY-05   LNH         ▮▮▮▮
TRT  2005151 842 0001         2  31-MAY-05   MJO1        O'Keefe, Michael

SIT  VISA_CONTROL_NUM       SEQ  DATA_ENTR   DATA_ENTRY  USER_NAME
---  --------------------   ---  ---------   ----------  --------------------------

TRT  2005151 842 0002         1  31-MAY-05   LNH         ▮▮▮▮
TRT  2005151 842 0002         2  31-MAY-05   MJO1        O'Keefe, Michael

SIT  VISA_CONTROL_NUM       SEQ  DATA_ENTR   DATA_ENTRY  USER_NAME
---  --------------------   ---  ---------   ----------  --------------------------

TRT  2005151 842 0003         1  31-MAY-05   LNH         ▮▮▮▮
TRT  2005151 842 0003         2  31-MAY-05   MJO1        O'Keefe, Michael
```

▮▮▮▮ reference to "▮▮▮▮" involves a Security Advisory Opinion ("SAO"). An SAO is the mechanism used by the Department of State ("DOS") to provide consular officers advice and background information to adjudicate visa applications abroad in cases of security or foreign policy interest. A special clearance from Washington, D.C. is mandatory in cases of name check-based hits, nationality-based requirements, or an alien's background and/or intentions while in the United States. In any visa case, a special clearance may be requested at the discretion of a consular officer. All special clearance requests must be submitted in the form of an SAO. Regulations regarding the issuance of special clearances are set forth at 9 FAM Appendix G, which is attached to this correspondence.

Most special clearance procedures are triggered by clear and objective circumstances, such as the applicants nationality, place of birth, residence or visa name check results. In addition, in cases where reasonable grounds exist, regardless of the results of the name check, to suspect that an applicant may be subject to any of the ineligibilities under Section 212(a)(3) of the Immigration and Nationality Act, including the potential transfer of sensitive technology and cases that may be politically sensitive, consular officers in the field suspend processing and institute SAO procedures. The SAO process is currently managed through the Bureau of Consular Affairs, DOS. Approximately ▆▆▆▆ SAOs were conducted in 2006.

The SAO process was implemented by DOS decades ago to provide a mechanism for additional scrutiny of high-risk categories of travelers seeking visa to enter the United States. Over the years, DOS, in conjunction with its inter-agency partners, has updated SAO requirements as necessary to counter new threats as they are identified and to eliminate unnecessary and/or duplicative efforts.

Regarding ▆▆▆▆ notation in the CCD notes for the need for a "▆▆▆▆" search, this designation was not in actuality the correct SAO category. In the case of ▆▆▆▆, where the applicant's travel to suspicious locations raised concerns on the part of the consular officer, a "▆▆▆▆" would have been the correct SAO category. Absent any further information flagging ▆▆▆▆, the SAO was not necessarily mandatory in this case. However, the consular officer – here, ▆▆▆▆, had the discretion to make such a call.

▆▆▆▆ is a visa name check by the FBI on aliens who are nationals of countries that have been designated as state sponsors of terrorism, or who otherwise fall within certain security-related criteria. Visas ▆▆▆▆ **is a catchall check used when the alien's personal characteristics** do not trigger another SAO category, but security concerns related to the individual's country of nationality justify additional screening prior to entry to the U.S. Visas ▆▆▆▆ **is currently used** to vet all applicants from State Sponsors of Terrorism nations including ▆▆▆▆.

▆▆▆▆ is an interagency review of aliens 16 years of age or older who have: (a) a CLASS hit; (b) a special processing requirement which necessitates the DOS review (for example an unfavorable prior SAO which has not be reversed); or (c) otherwise raised security concerns with a consular officer. These checks are also run on aliens who are from nations: 1) which the United States does not recognize; 2) with whom the United States does not have diplomatic relations; or 3) which have special clearance requirements.



        Sincerely,

        JEFFREY A. TAYLOR
        UNITED STATES ATTORNEY


By:        Brenda J. Johnson
        Denise Cheung
        Assistant United States Attorneys
        National Security Section

Attachments