**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | **CRIMINAL NO. 1:06-CR-00249 (PLF/JMF)** |
| | : | |
| **v.** | : | |
| | : | |
| **MICHAEL JOHN O'KEEFE, Sr. and** | : | |
| **SUNIL AGRAWAL,** | : | |
| | : | |
| **Defendants.** | : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT AGRAWAL'S
THIRD MOTION TO COMPEL DISCOVERY**

The United States of America, by and through the United States Attorney for the District of Columbia, respectfully opposes Defendant Sunil Agrawal's motion to compel discovery. The United States has provided an extraordinary large volume of materials pursuant to Rule 16(a)(1)(E) of the Federal Rules of Criminal Procedure, and the additional information requested by Defendant Agrawal is in no way material in light of the discovery already provided and the proposed offers of stipulation by the government. None of the materials requested by Defendant Agrawal are exculpatory or even favorable to the defendant within the meaning of Brady v. Maryland, 373 U.S. 83 (1963). The defendant's motion is therefore without merit and should be denied. In support of this opposition, the government states as follows:

## I. BACKGROUND

Defendant Agrawal is the chief executive officer ("CEO") of STS Jewels, Inc. ("STS Jewels"), which specializes in designing, manufacturing, and distributing gems and jewelry. The company has worldwide operations and employs a large number of foreign nationals who often need visas to travel to the United States. Co-Defendant Michael John O'Keefe, Sr., was employed as a consular officer at the U.S. Consulate in Toronto, Canada. As a consular officer,

Defendant O'Keefe's duties included reviewing visa applications, conducting in-person interviews of visa applicants, and making visa issuance determinations.

A United States visa is a travel document placed in a passport by a consular officer working for the U.S. Department of State. It allows the bearer to come to the United States and apply for admission into the country. In order to obtain a visa to the United States, a visa applicant must fill out an application form, present a photograph and a passport, be interviewed by a consular official, have a fingerprint scan conducted, pay appropriate fees, and present evidence of qualification for the visa.[1] The final decision as to whether a visa is issued or denied is up to the interviewing consular officer, who makes the determination based on experience, information set forth in the application, and the applicant interview.

From February 1, 2004, through April 2006, twenty-two visa applications were submitted to the Toronto consulate on behalf of STS Jewels-affiliated persons.[2] In many, if not all of these

---

[1]     There are two types of visas – immigrant and non-immigrant. Moreover, there are several categories of visas, for example, H-1B for specialty workers, L-1 for intracompany transfers, and B1/B2 for temporary visitors for business or pleasure. Each category has particular requirements which an applicant must meet in order to obtain the visa.

[2]     Although Defendant Agrawal asserts that the United States Bureau of Citizenship and Immigration Services ("CIS") (formerly the Immigration and Naturalization Service) had already legally authorized and approved each of the visa applicants to work for Defendant Agrawal's company in the United States, the CIS only makes a determination as to whether a petitioner is eligible to apply for a certain category of visa. But CIS approval only constitutes *prima facie* evidence of eligibility, not approvability. Interviewing consular officers like Co-Defendant O'Keefe are charged with the responsibility of granting or denying an application for a visa for all applicants – including CIS-approved persons – based upon the totality of information they gather, which includes verifying the identity of the applicant, and the veracity of information provided on the application and by the applicant during an interview. Thus, a consular officer can deny a CIS-approved applicant, and a visa application interview is not merely a rubber stamp of approval.

cases, Defendant Agrawal sent facsimiles specifically addressed to Co-Defendant O'Keefe asking

for expedited treatment for these STS Jewels-sponsored persons.  When Defendant Agrawal made

such a request for expedited treatment, Co-Defendant O'Keefe routinely granted them and

scheduled expedited appointments.   Moreover, Co-Defendant O'Keefe personally handled these

STS Jewels applicants and issued twenty-one of these twenty-two visas.

On August 18, 2006, an Indictment was filed charging Defendant Agrawal and Co-

Defendant O'Keefe with one count of conspiracy, in violation of 18 U.S.C. § 371, and two counts

of bribery, in violation of 18 U.S.C. §§ 201(b)(1) and (2).[3]

On March 25, 2008, a Superseding Indictment was filed charging Defendant

Agrawal and Co-Defendant O'Keefe with one count of conspiracy, in violation of 18 U.S.C. §

371, and two counts of bribery, in violation of 18 U.S.C. §§ 201(b)(1) and (2).  As set forth in the

---

STS Jewels employees were not exempt from the visa interview process as CIS-approved
individuals, rather they had to apply and have an interview just like every other visa applicant.
A retrospective conclusion that none of these employees raised any type of security or
admissibility concern does not negate the requirement that all of the employees, at the time of
their application, had to follow the complete visa application process, including participating in
an interview with a consular officer.

[3]       As set forth in the original Indictment, the objects of the conspiracy were:

      A.      for the defendant [O'Keefe] to receive travel, gifts, and
other personal benefits in exchange for issuing visas to
benefit defendant [Agrawal] and his business, STS Jewels.

      B.      for defendant [Agrawal] to avoid established procedures for
scheduling visa interview appointments and obtain
expedited visa interview appointments and expedited
issuance of visas, thereby saving him, his business and his
employees time and money.

Indictment, Count One, at ¶ 9(A) & (B).

Superseding Indictment, the objects of the conspiracy were:

A.    for the defendant [O'Keefe] to receive travel, gifts, and other personal benefits in exchange for expediting visa interview appointments and/or issuing visas to benefit defendant [Agrawal] and his business, STS Jewels.

B.    for defendant [Agrawal] to obtain expedited visa interview appointments for his employees and persons sponsored by STS Jewels, thereby saving him, his business and his employees time and money.

C.    for the defendant [Agrawal] to obtain the issuance of visas for his employees and persons sponsored by STS Jewels, thereby saving him, his business and his employees, time and money.

Superseding Indictment, Count One, at ¶ 9(A)-(C).

The charged conduct concerns Defendant Agrawal's provision of things of value to Co-Defendant O'Keefe with an intent to influence Defendant O'Keefe in his official duties as a consular officer at the U.S. Consulate in Toronto, Canada with respect to the scheduling of expedited visa appointments and the granting of visas to STS Jewels, Inc. applicants sponsored by Defendant Agrawal.   The Superseding Indictment further sets forth how Defendant Agrawal and Co-Defendant O'Keefe would frequently communicate with one another regarding the scheduling of expedited appointments and the issuance of visas for STS Jewels persons, as well as the provision of trips and jewelry paid for by Defendant Agrawal and bestowed upon Co-Defendant O'Keefe.

On the same date the Superseding Indictment was returned, the government filed a detailed Memorandum Outlining Changes from the Original Indictment to the Superseding Indictment [Docket No. 99].  The Superseding Indictment charges the defendants with the same three counts as charged in the original Indictment.  It is the government's contention now, as it has always been, that Defendant Agrawal provided things of value to Co-Defendant O'Keefe in

return for Co-Defendant O'Keefe's performance of official acts, namely, the expediting of the handling of applications for visas to STS Jewels employees and persons sponsored by STS Jewels, and the issuance of visas to STS Jewels employees and persons sponsored by STS Jewels. The Superseding Indictment is essentially the same as the original one, and there is no "new bribery theory" justifying additional discovery as alleged in defendant's motion. The government sought to return the Superseding Indictment simply to remove any alleged ambiguity about the defendants' conduct. On April 15, 2008, Defendant Agrawal was arraigned on the Superseding Indictment.

Defendant Agrawal has been provided with voluminous discovery amounting to well over 200,000 pages of documents pursuant to the Court's April 27, 2007, Order. All of the modifications that were made to the Superseding Indictment implicated facts previously disclosed to the defendants and on which the defendants had already received full discovery.[4]

## II.  DEFENDANT AGRAWAL'S DISCOVERY REQUESTS

On April 4, 2008, Defendant Agrawal made six discovery requests set forth in Exhibit 1 to Defendant's Memorandum of Law in Support of Mr. Agrawal's Third Motion to Compel Discovery (hereinafter "Def. Memorandum"). On April 30, 2008, the government responded to these discovery requests in a letter, attached to Defendant's Memorandum as Exhibit 2. Now, in Defendant's Memorandum filed June 13, 2008, and amended Memorandum filed June 16, 2008, Defendant Agrawal moves to compel discovery which falls into three categories: (1) pre- and

---

[4]     The discovery process is not technically completed since the defense, on May 22, 2008, tasked the government with providing identifying information on thousands of documents. The government is in the process of obtaining the information on these documents requested by the defendants.

post-Indictment Department of State materials regarding the issuance of visas for 21 STS Jewels,

Inc. ("STS Jewels") employees and sponsored persons (hereinafter "STS Jewels persons"); (2)

post-Indictment Department of State analyses and e-mails regarding visa applications of 21 STS

Jewels persons; and (3) green cards and United States Bureau of Citizenship and Immigration

Services ("CIS")[5] work authorizations regarding 21 STS Jewels persons.

### III.  ARGUMENT

Defendant Agrawal contends that the above requests implicate <u>Brady</u> material.  This

argument has no merit.  First and foremost, the information sought by Defendant Agrawal is not

<u>Brady</u>.  Most of the information requested, if it even exists, would not lead to evidence favorable

to Defendant within the meaning of <u>Brady</u>.  Second, such information is either not discoverable

under Rule 16 or unnecessary.  Finally, Defendant Agrawal, or individuals under his control,

possess many of the items requested from CIS because his company and/or employees provided

these documents to the CIS.  Moreover, CIS records and internal documents are not relevant or

material to this case.  Thus, the government should not be compelled to provide the items sought

in Defendant Agrawal's Proposed Order, and Defendant's motion to compel should be denied.

### A.  Legal Standard

<u>Brady</u> requires that the government disclose exculpatory and impeachment evidence that

is "both favorable to the accused and 'material either to guilt or to punishment.'" <u>United States v.</u>

<u>Bagley</u>, 473 U.S. 667, 674 (1985) (quoting <u>Brady</u>, 373 U.S. at 87).  As the Supreme Court has

stated, although the term "<u>Brady</u> violation" is sometimes used to refer to any failure to disclose

---

[5]        The CIS was formerly known as the United States Immigration and Naturalization
Service.

exculpatory evidence, "strictly speaking, there is never a real 'Brady violation' unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict." Strickler  v. Greene, 527 U.S. 263, 281 (1999).  A "reasonable probability" is a "probability sufficient to undermine confidence in the outcome." Bagley, 473 U.S. at 682 (citation omitted).  The Court in United States v. Safavian , 233 F.R.D.12, 16-17 (D.D.C. 2005), defined the term "favorable" as  "any information in the possession of the government . . .  that relates to guilt or punishment that tends to help the defense by either bolstering the defense case or impeaching potential prosecution witnesses."

Rule 16 governs pre-trial discovery requests.  In United States v. Marshall, 132 F. 3d 63, 68 (D.C. Cir. 1998) (citations omitted), the D.C. Circuit stated that evidence is material to the preparation of the defense if  "there is a strong indication that [the evidence] will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal."  Materiality, within the meaning of Rule 16(a) (1)(E), has been construed to mean more than that the evidence in question bears some abstract logical relationship to the issues in the case; indeed, there must also be some indication that the pretrial disclosure of the disputed evidence would have enabled the defendant "significantly to alter the quantum of proof in his favor."  See United States v. Buckley, 586 F 2d 498 (5th Cir. 1978); see also United States v. Ross, 511 F. 2d 757 (5th Cir. 1975) (noting that the extensiveness of the material which the government provided and the availability of the requested items from sources other than the government must be considered when making this judgment).

**B.  The Motion to Compel Should Be Denied Because the Information Requested is Not Material, Favorable or Exculpatory**

Defendant Agrawal maintains that the requested information would be favorable to his defense in that it would show that expedited visas would have been granted even in the absence of bribery.   The defense argues that, "It goes without saying that no one would bribe a public official to do something that will occur anyway."  Def. Memorandum at 4.

This statement, however, has two fundamental flaws.  First, it is never a forgone conclusion that the issuance of expedited appointments or visas "will occur anyway."  The expedited appointments for the STS Jewels persons would not *necessarily* have been granted, and the visas would not *necessarily* have been issued.   In fact, requests for appointments *were* denied when defendant O'Keefe was not present to assure the appointments would be expedited.  For example, as set forth in the Superseding Indictment at ¶ 11 (11):

> On or about January 6, 2005, defendant **MICHAEL JOHN O'KEEFE, Sr.** sent the following electronic communication to defendant **SUNIL AGRAWAL**:
>
> > Sunil, Just to let you know **your fax came in yesterday while I was home ill and as a result was refused.  I pulled the case today and approved it so your people should be getting a call today telling her she can have an expedited appointment.**  She can come in next week and I will see her.  Just have them tell my secretary, when she calls when she wants to come in.  **In the future just have someone call me and let me know that the fax is coming.  I will be interviewing her and I don't foresee any problems.**  Mike O'Keefe (Emphasis added)

Similarly, the following occurred on another occasion, as set forth in the Superseding Indictment at ¶ 11(28):

> On or about May 31, 2005, a consular officer at the Consulate in Toronto was in the process of interviewing

8

> P.S.B., S.K.B. and I.S.B., respectively, an STS Jewels
> employee and his family members. The consular officer
> was in the process of notifying the family that it would be
> denying their visas on that day pending additional inquiry
> when defendant **MICHAEL JOHN O'KEEFE, Sr.**
> appeared and stated that he would be taking over the
> adjudication of the visas, which he did.

Moreover, as information already provided by the government to Defendant Agrawal regarding past visa issuances of STS Jewels persons, on at least twelve other occasions, the visa applications for STS Jewels persons were denied. Although some of the visas were eventually issued, that result was never inevitable, and STS Jewels persons often had to wait for a period of time before ultimately having their visa approved by the respective U.S. consulate or embassy.

The second flaw in Defendant Agrawal's argument is that the defendant maintains that "no one would bribe" someone to obtain expedited appointments and visas because the STS Jewels persons were already guaranteed those visas, as supported by their past visa issuances, CIS approvals, and/or post-Indictment visa issuances. As set forth in the Superseding Indictment, this contention runs counter to the evidence in this case. Moreover, the discovery sought by Defendant Agrawal does not negate the statutory elements of bribery. Defendant Agrawal's flawed argument is as follows: the requested documents – all materials related to every specified STS Jewels person's visa application(s) to the U.S. Department of State and CIS petition(s) pertaining to those petitions – will demonstrate that no bribery occurred because STS Jewels persons were granted visas both before and after the conduct charged in the Superseding Indictment, and the CIS approval process guaranteed visa issuances for STS Jewels persons. According to Defendant, all 21 STS Jewels persons would have obtained visas under any circumstances.

The law in the D.C. Circuit, however, speaks for itself in highlighting the flaw in this argument, establishing that "it is not a defense to the crime of bribery that had there been no bribe, the public official might have lawfully and properly performed the same act." United States v. Orenuga, 430 F.3d 1158, 1166 (D.C. Cir. 2005).[6]  Put in different words, it is not a "defense to the crime of bribery…that the [offer] [or] [promise] [demand] [or] [receipt] of anything of value was made [to] . . .  the public official to influence an official act which is actually lawful, desirable, or even beneficial to the public."  O'MALLEY, GRENIG, AND LEE, FEDERAL JURY PRACTICE AND INSTRUCTIONS § 27.11 (2007).[7]

An analogy to prostitution more straightforwardly illustrates the point: people frequently engage in sex legally, i.e., with no money or gifts given in exchange.  The fact that many people engage in sex at no cost does not serve to exculpate someone engaging in solicitation or prostitution, i.e., the sale or purchase of sex.  Thus, evidence of the prevalence of sex at no charge would not be relevant or material to a charge for engaging in prostitution.  The same is true for bribery: the Department of State may grant expedited appointments and visas as part of its standard operating procedures.  The fact that consular officials schedule expedited visa

---

[6]    Defense's citation to United States v. Gatling, 96 F.3d 1511, 1522 (D.C. Cir. 1996), is not relevant, since the official acts here would not have been performed "in any event." Id. at 1522  (quoting United States v. Campbell, 685 F.2d 141, 148 (D.C. Cir. 1982)).  As discussed above, the granting of expedited appointments and the issuance of the visas would not have necessarily and inevitably occurred.  Thus, the fact that Defendant Agrawal paid bribes to ensure the immediate issuance of the visas can and does constitute bribery.

[7]    See also United States v. Jannotti, 673 F.2d 578, 601 (3d Cir. 1982), quoting United States v. Labovitz, 251 F.2d 393, 394 (3d Cir. 1958) ("It is neither material nor a defense to bribery that 'had there been no bribe, the (public official) might, on the available data, lawfully and properly have made the very recommendation that (the briber) wanted him to make'"); United States v. Anderson, 509 F.2d 313 (D.C. Cir. 1974) cert. denied, 420 U.S. 991 (1975).

appointments and issue expedited visas without receiving bribes in no way exculpates the

defendants from engaging in bribery, i.e., the purchase of expedited visa appointments and visa

issuances.  Thus, evidence that expedited visa appointments and expedited visas are granted

without bribery would not be relevant or material to a charge for engaging in bribery.

The fact is that Defendant Agrawal was buying certainty, both in the timing and in the

processing of visa issuances.  Under legal circumstances, it is never a foregone conclusion that a

visa will be issued.  By engaging in bribery, Defendant Agrawal was ensuring the issuance of

visas at his convenience.  However, the decision to grant or refuse a visa is a decision that should

be, and usually is, made by a consular official without outside influence or bribery.  The United

States was denied the opportunity for an impartial official to render a decision on whether or not

to grant the visas.   It cannot be established that the STS Jewels persons would have received

visas at all if not for Co-Defendant O'Keefe's actions.  Even assuming *arguendo* that it could be

established that those STS Jewels persons would have been issued visas without Co-Defendant

O'Keefe's intervention on the days on which they were scheduled for visa appointments, that still

would not defeat the bribery charge and would not make the information sought exculpatory or

material.  The information requested provides no defense to the charge of bribery.  The specific

requests are further discussed below:

### 1) Pre- and Post-Indictment Issuance of Visas

Records of the existence of pre- and post-indictment issuance of visas to STS Jewels

persons have already been provided to Defendant Agrawal.  The United States provided redacted,

computer-generated printouts from the U.S. Department of State for the STS Jewels-affiliated

persons identified by initials in the indictment. The printouts indicate all occasions contained in

11

the Department of State's records when the STS Jewels persons identified by initials in the

indictment submitted applications for visas worldwide to enter the United States.[8]  The records

provided also indicate that on twelve occasions, some of the same STS Jewels persons applied for

visas and were refused, at a location other than where Co-Defendant O'Keefe was present and

able to assure the visa would be issued for a bribe.[9]

The information redacted by the U.S. Department of State is not relevant to the issues in

this case.  The Department of State only redacted the names of employees that granted or denied

visas to STS Jewels employees at locations outside Toronto and outside the time frame of the

conduct alleged in the indictment.  Defendant Agrawal alleges that the names of these officials

would be somehow be helpful.  The names in and of themselves are not helpful, and they are

certainly not favorable to the defense and are therefore not relevant or Brady material.

### 2) Post-Indictment Analyses and Emails Regarding Visa Applications

Defendant Agrawal seeks alleged post-indictment analyses and e-mails regarding visa

applications for the time period April 1, 2006 to March 25, 2008.   The indictment charges

conduct from February 1, 2004 to August 18, 2006.   The government has previously provided all

known materials relating to STS Jewels-related individuals who applied for visas from the

Toronto consulate from January 1, 2004 to approximately August, 2006.[10]  Defendant Agrawal

has also been provided the relevant information regarding the emails to and from defendant

---

[8]    Discovery was previously provided regarding the STS Jewels-affiliated persons
who applied for visas at the Toronto consulate.

[9]    The records also indicate that some STS Jewels-affiliated persons were granted
visas at some subsequent date.

[10] The government is unaware of any STS Jewels-affiliated person applying for a visa
from the Toronto consulate from August 2006, to the present time.

O'Keefe regarding the STS Jewels-affiliated applicants. This information is intrinsically linked to the charged offenses.

However, there is absolutely no relevance to communications between Department of State employees, if those communications ever existed, regarding the STS Jewels applicants up until March 25, 2008.  Any such communications, were they to exist, would necessarily result in work product disclosures and would not be discoverable.  It is unlikely that the State Department officials and employees from Toronto identified in the defendant's request would  have been involved in any post-indictment decisions, were they to exist, regarding the actual STS Jewels applicants.

Defendant Agrawal cites Attachment A [Docket No. 86] as some indication that a discoverable post-indictment analysis of the STS Jewels sponsored persons exists.  The defendant is misreading Attachment A.   Attachment A makes no reference to a post-indictment analysis. Rather, Attachment A explains Paragraph 11(28) of the Superseding Indictment and provides the supporting documentation.  To the extent that the defense considers this documentation analysis, they have already been provided the information in discovery.  Furthermore, assuming any post-indictment  "analysis" conducted by any Department of State consular officer exists, it would have been conducted in response to investigative inquiries  made as a result of discovery requests. They would certainly not be entitled to such work product.

### 3) Green cards and CIS work authorizations

Defendant Agrawal requests all work authorization applications and green card materials submitted by STS Jewels persons from July 1, 1999 to March 25, 2008.[11]  The defendant's request

---

[11]    As a result, many of the documents requested fall outside the relevant time frame of this case.

shows either a lack of understanding of the process or a deliberate attempt to delay this case and confuse the issues.  Given that the information is 1) separate and distinct from the visa application process and the work of consular officials, 2) prohibitively time-consuming and expensive to produce, and 3) actually within defendant's custody and control, the government should not be required to comply with this request.

Defendant appears to contend that CIS work authorization documents and green card applications/materials demonstrate that the 21 STS Jewels employees were entitled to live and work in the United States. [12]  This assertion is nonsensical.  First, no alien is entitled to work authorizations and green cards.  Second, CIS work authorizations are not, as defendant contends, *prima facie* evidence of "approvability."  Once CIS has adjudicated and approved a visa petition application, CIS forwards the petition to the Department of State for consular processing and issuance of a visa.  The alien beneficiary of the approved visa petition has the burden to prove that he or she is eligible for that visa, *notwithstanding the approved petition*.  22 C.F.R. § 42.21.

---

[12]  Visas and green cards are different types of documents obtained through different processes.  Though Defendant Agrawal merges all the terms and processes together in his requests, it is important to keep the differences in mind.

As stated earlier, there are several categories of non-immigrant visas, for example, H-1B for specialty workers and L-1 for intracompany transfers.  Each category has particular requirements which an applicant must meet in order to obtain a visa. Persons holding non-immigrant visas are not eligible for green cards.  If a person has a non-immigrant visa and wishes to obtain a green card, they must first apply for a change in status to obtain an immigrant visa.
Visas are issued by the Department of State.  Green cards are issued by CIS. Both agencies have enormous discretion in granting or denying petitions for either type of document, and both conduct their analyses independently of each other. Neither type of decision is subject to judicial review.  It is difficult to understand why the discretionary determinations of one agency would be relevant to the equally discretionary analysis of another.

Consular officers like defendant O'Keefe are charged with the responsibility of granting or

denying the visa applications of all applicants – including CIS-approved persons -  based upon the

totality of the information they gather from the application and the interview.  Since a consular

officer can deny a CIS-approved applicant, visa application interviews are not merely a rubber

stamp of approval.  There can be nothing exculpatory or even relevant about documents that

address only the first step of a two-step process.

Similarly, the process of obtaining lawful permanent resident status (a "green card") is

separate and apart from obtaining a visa.  At the time Defendant Agrawal and his company

submitted petitions to CIS for his employees to obtain non-immigrant visas, they were ineligible

for green cards.  Certainly a lawful permanent resident would not need a visa to enter the United

States and would therefore have no interaction with consular officials at all.  This case, protracted

discovery aside, is about Defendant Agrawal's decision to bribe a *consular officer* to expedite the

*visa process* for STS Jewels employees and family members.  It is not about green card

applications or CIS.  Defendant Agrawal is not entitled to discovery of information which bears

only an abstract connection to his case.  *See, e.g.,* United States v. Buckley, 586 F.2d 498 (5th Cir.

1978).

Further, the requested information is in the custody and control of Defendant Agrawal and

his company.  STS Jewels would have provided the petition documents for each employee during

the petition process.  The government should not be required to produce information the

defendant could obtain himself.  Brady seeks to level the playing field, to allow a defendant

access to favorable evidence within the government's control.  The government has no such

advantage in this case.  Defendant Agrawal could locate these documents just as easily as could the government.  He provides no rationale for requiring the government to do the work for him.

Finally, the government would have to engage in an extremely time consuming, labor intensive and prohibitively expensive search of a sprawling mass of records to locate the voluminous requested documents.  The non-immigrant and immigrant visa petitions requested by the defendant are located in any number of CIS district offices and service centers, as well as the National Records Center in Lee's Summit, Missouri.  Production of these files would be unduly burdensome, especially since the defendant is in a better position to obtain them himself. The defendant's request should consequently be denied.

## IV.  CONCLUSION

The information requested by defendant Agrawal is not material to his defense and is not exculpatory. Consequently, the requests set forth in his Proposed Order should be denied.

WHEREFORE, for the foregoing reasons, the United States respectfully requests that the defendant's motion to compel discovery be denied.

Respectfully submitted,

JEFFREY A. TAYLOR
United States Attorney
D.C. Bar Number 498610

By:

_____/s/_____

BRENDA J. JOHNSON
DENISE CHEUNG
Assistant United States Attorneys
National Security Section
555 4th Street, N.W. – 11th Floor
Washington, D.C.  20530

July 3, 2008

17