# DECLARATION

I, Brett D. Harrison do hereby state as follows:

1.  I am now, and have been since September of 2006, a Director in FTI Consulting's (FTI) Washington, DC, Electronic Evidence Consulting practice. My complete list of qualifications was previously provided as part of my Declaration dated June 6th of 2008.

2.  With respect to this particular matter, I have participated in informal telephone conversations with Toronto Information Management staff members Gil Furtado and John Long. (Gil Furtado was initially represented by the Government as being the specific individual on the Toronto Consulate's Information Management Staff that conducted searches of the email system, personal computers and network storage drives.) Additionally, I have reviewed the Declarations provided by Peggy Petrovich on October 27th, 2007, March 4th of 2008 and June 19th of 2008. I have also reviewed the electronic files which were produced by the Toronto Consulate on three CDROMs, the letter received from the United States Department of Justice (DOJ) dated April 18th, 2008, the May 29th, 2007 email from Gil Furtado to John Long, the Declaration of John Long data July 3rd of 2008 and the Government's Opposition to Defendants Motion to Dismiss dated July 3rd, 2008.

3.  The search methodologies which Ms. Petrovich, Mr. Long and the other custodians say they implemented were at best "ad hoc," unstructured and inconsistent. Had Ms. Petrovich consulted with the Department of State's Computer Investigations and Forensics Branch, I have no doubt that they would have informed her of the limitations of her intended search methodology using Microsoft's Outlook and "My Computer" programs and they would have likely suggested an approach more consistent with the standards adhered to within the computer forensic and e-discovery communities. The Government was apparently in contact with the Computer Investigation and Forensics Branch because they did utilize their services for the portions of the preservation, searching and analysis effort which were most important to the Government's case.

4.  With respect to the process of keyword searching, the implementation of effective keyword searches is not necessarily a straight-forward process and does require that the person conducting the search possess a complete understanding of the capabilities and limitations of the specific search tools. For instance, the simple inclusion of quotation marks around the keywords imposes significant restrictions and can prevent the searches from identifying the intended results. For instance, a search for the term "expedite" when put in quotes would not return a positive result for the keyword "expedited."

5.  Ms. Petrovich's Declaration dated June 19, 2008 states that "keyword searches were performed using either Microsoft Outlook (for emails) or Microsoft's "My Computer" search program (for all electronic files)." Both of those programs have serious, well known limitations and are not considered appropriate search tools by either the computer forensic or e-discovery communities. Specifically, Microsoft Outlook's search tool does not search attachments to emails and Microsoft's "My Computer" program does not search any deleted files, ZIP/compressed files, Adobe PDF files, archived email stored in PST files or any other file which utilizes any encoding other than the basic ASCII text format. Additionally, if the "My Computer" program is not properly configured, it will only search for the existence of the keywords within the names of the files as opposed to instances of the keywords contained within the body of the file. This may account for the lack of electronic documents which were produced as a result of the Consulate's searches.

6.  Ms. Petrovich states that she personally conducted a search of the shared mailboxes and she specifically references the "TRT, Employee NIV Mailbox" and the "Toronto, Consular" mailbox. As can be seen from the screenshots displayed within "Attachment A" to this Declaration, no search results for those mailboxes appear within Toronto's production of native

1

files. The email messages which were recently attached as Exhibit 3 to the Government's Opposition to Defendants Motion to Dismiss dated July 3rd, 2008 are in fact all messages which were provided within the native file mailbox search results of custodians John Whiteley, Jane Boyd, Pat Haye, Althea Brathwaite and Maribel Ebona. No search results were identified by folder as having been collected from the aforementioned shared mailboxes. Additionally, based on the inconsistent statements made by Ms. Petrovich and Mr. Long regarding which search terms were used and how they were applied, I cannot determine how they actually performed the searches nor can I conclude that the search results are reliable.

7.    I have reviewed the July 3rd 2008, Declaration of John Long and have weighed his statements against the information which he related to me during our April 23, 2008 conference call. During that conference call, he relayed specifics regarding his searches of the Toronto Consulate's email systems. His July 3rd Declaration does not present any new information which improves my opinion of the searches which he performed. Mr. Long does not dispute that the searches which he performed would not have searched through email messages contained on any custodian's local hard drive. He also does not dispute that his efforts would have failed to search the contents of any email attachments. Although the statements made in his signed Declaration are somewhat definitive, the answers which he offered via the telephone were less so.

8.    It is quite apparent that the preservation and searching efforts which the Toronto Consulate stated they performed were informal, unstructured, inconsistent and not well implemented. Based on my review of the data and of the four Declarations submitted by the Government, I cannot conclude with any degree of confidence that the efforts performed by the Government were reliable. By the Government's own admission, no preservation notice was ever circulated, a fact which is hard for me to fathom. A reasonable preservation effort was never even attempted for the majority of the electronic sources, except those sources which were likely to prove beneficial to the Government's case. Contrary to the Government's previous assertions, a proper preservation effort in this matter would not have required that the Consulate remove its network computer systems from service. The simple creation of a new backup tape or the preservation of an existing backup tape would have constituted an adequate preservation of much of the data. Additionally, forensic imaging of the personal computers used by selected custodians or at least the completion of some preservation effort was certainly warranted. The failure to properly preserve electronic documents and the failure to properly search for responsive electronic documents is particularly egregious given that the State Department has a very competent Computer Forensics and Investigations Branch. Based on my knowledge of the Consulate's computer systems, an intelligent preservation and searching effort would not have incurred excessive cost or been unduly burdensome.

I declare under penalty of law that the foregoing is true and correct to the best of my knowledge and belief.

Brett D. Harrison
Director, FTI Consulting
1201 Eye Street NW
Suite 300
Washington, DC 20005

July 17, 2008

2

# Attachment A to Declaration of Brett D. Harrison (7/18/08)

E-mail boxes delivered on the CDROM labeled "Toronto Production Native Files."





1